**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PRINCETON CARBONWORKS, INC. | |
| Plaintiff, | |
| v. | C.A. No. 25-131-RGA |
| PAUL DANIELS, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT PAUL DANIELS' OPENING BRIEF IN SUPPORT OF HIS MOTION TO DISMISS AND/OR TRANSFER**

*Of Counsel*:

WEISSMAN & DERVISHI, P.A.
Brian S. Dervishi
One SE Third Avenue, Suite 1700
Miami, Florida 33131
305-347-4070
bdervishi@wdpalaw.com

**SMITH KATZENSTEIN & JENKINS LLP**

David A. Jenkins (No. 932)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
daj@skjlaw.com
dat@skjlaw.com

*Attorneys for Defendant Paul Daniels*

Dated: March 21, 2025

## **TABLE OF CONTENTS**

TABLE OF CITATIONS ..................................................................................................... III

I.    NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.   SUMMARY OF ARGUMENT ......................................................................................... 2

III.  STATEMENT OF FACTS ................................................................................................ 2

IV.   ARGUMENT ..................................................................................................................... 5

      A.    The FAC should be dismissed for lack of personal jurisdiction ............................ 5

            1.    General Jurisdiction ..................................................................................... 6

            2.    Specific Jurisdiction..................................................................................... 6

            3.    Conclusion .................................................................................................. 11

      B.    Alternatively, this matter should be transferred to the United States District Court
            for the Southern District of Florida......................................................................... 12

            1.    This matter could have been brought in Florida ........................................ 12

            2.    The *Jumara* factors favor transfer............................................................. 14

V.    CONCLUSION................................................................................................................. 19

## <u>TABLE OF CITATIONS</u>

**Cases**

*Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*,
    68 F.3d 409 (11th Cir. 1995) ................................................. 12

*Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*,
    295 F. Supp. 2d 400 (D. Del. 2002)................................................. 6

*Drugstore-Direct, Inc. v. Cartier Div. of Richemont N.A., Inc.*,
    350 F.Supp.2d 620 (E.D. Pa. 2004) ................................................. 15

*Germaninvestments AG v. Allomet Corp.*,
    2020 WL 6870459 (Del. Ch. Nov. 20, 2020) ........................................ 9

*Hynson v. Drummond Coal Co., Inc.*,
    601 A.2d 570 (Del. Ch. 1991)................................................. passim

*Intellectual Ventures I LLC v. Altera Corp.*,
    842 F.Supp.2d 744 (D. Del. 2012)................................................. 12

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
    797 F. Supp. 2d 472 (D. Del. 2011)................................................. 16

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)................................................. 12, 14, 15

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007)................................................. 6

*Motorola, Inc. v. PC-Tel, Inc.*,
    58 F. Supp. 2d 349 (D. Del. 1999)................................................. 17

*Onescreen v. Hudgens*,
    2010 WL 12223937 (Del. Ch. Mar. 30, 2010)................................. 9, 10, 11

*Pennzoil Products Co. v. Colelli & Associates, Inc.*,
    149 F.3d 197 (3d Cir. 1998)................................................. 6

*Shaffer v. Heitner*,
    433 U.S. 186 (1977)................................................. 9

*Siegmund v. Xuelian Bian*,
    2018 WL 1611197 (S.D. Fla. Apr. 2, 2018) ........................................ 13

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)................................................. 14

**Statutes**

10 *Del. C.* § 3104(c)................................................. 8

28 U.S.C. § 1332................................................. 13

28 U.S.C. § 1391(b) ................................................. 13

28 U.S.C. § 1404(a) ........................................................................................................ 14

28 U.S.C. § 2201 ............................................................................................................ 12

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ......................................................................... 5

## I.    <u>**NATURE AND STAGE OF THE PROCEEDINGS**</u>

This action was filed in the Court of Chancery of the State of Delaware on January 9, 2025. (D.I. 1-1, Ex. 1 at PageID #:12–24).  The following day, before serving process on Defendant Paul Daniels ("Defendant" or "Mr. Daniels"), counsel for Plaintiff Princeton CarbonWorks Inc. ("Plaintiff" or "PCW-DE") moved the Court of Chancery for an order permitting service by publication "pursuant to 10 *Del. C.* §365 and 8 *Del. C.* § 111, and Court of Chancery Rule 4(da)." Case No. 2025-0028-PAF, D.I. 3 (Motion) at 1, (Jan. 10, 2025 Del. Ch.).  On January 22, 2025, Vice Chancellor Fioravanti granted the motion with modifications, stating "[n]othing herein shall preclude defendant from challenging jurisdiction or service of process."  (D.I. 1-1, Ex. 1 at PageID #: 10).  Before the 3-week period for service by publication passed, on January 31, 2025, Mr. Daniels removed the Court of Chancery action to this court.  (D.I. 1).

On February 21, 2025, Mr. Daniels moved to dismiss the Complaint for lack of personal jurisdiction over him in Delaware, or, alternatively, to transfer the action to the United States District Court for the Southern District of Florida.  (D.I. 7).  The response to the motion was due on March 7, 2025.  D. Del. LR 7.1.2(b).  Also, on February 21, 2025, the parties jointly submitted the statement required by Local Rule 81.2.  (D.I. 10).  This statement acknowledged that service had been completed on February 13, 2025; that prior to the filing of the motion to dismiss the deadline for Defendant to respond to the Complaint was March 5, 2025; and that the only pending matter requiring the Court's attention was the motion to dismiss or to transfer.  (*Id.*).

On March 7, 2025, the day Plaintiff's response to the pending motions (D.I. 7) was due, Plaintiff filed a First Amended Complaint ("FAC") seeking to bolster a basis for personal jurisdiction over Mr. Daniels and address his motion to dismiss or to transfer.  (D.I. 11).  By stipulation of the parties, on March 13, 2025, the Court ordered the motion to transfer dismissed without prejudice.  (D.I. 13).  Mr. Daniels presently renews his motion to dismiss the FAC or to

transfer. The proceedings in the Southern District of Florida involving all the parties to the dispute are continuing. *Daniels v. Crotty et al.*, Case No. 1:25-cv-20137-DPG (S.D. Fl.) (the "Florida litigation").

## II.    SUMMARY OF ARGUMENT

1.    The Court should dismiss this action for lack of personal jurisdiction over Mr. Daniels, who is a Pennsylvania resident. The FAC does not allege that Mr. Daniels has acted in any way to place him within reach of the Delaware long-arm statute. Rather, the FAC alleges that Delaware courts have personal jurisdiction over Mr. Daniels by virtue of his purported ownership of stock in PCW-DE (a Delaware entity that is the plaintiff in this action). Because the FAC does not allege that Mr. Daniels claims to assert a right inherent to the "attributes or characteristics" of stock in a Delaware corporation, such as voting rights, liquidation preferences, authenticity of certificates, or fiduciary duties, Plaintiff's allegations of personal jurisdiction are inconsistent with Mr. Daniels' due process rights, and the FAC should be dismissed.

2.    Alternatively, under the Third Circuit's *Jumara* factors, the Court should proceed directly to transfer this action to the United States District Court for the Southern District of Florida where parallel litigation among Mr. Daniels, Plaintiff, and other related parties is currently pending.

## III.    STATEMENT OF FACTS

1.    Mr. Daniels is a former elite rower and long-time cycling enthusiast. (D.I. 9-1, Ex. A at ¶¶ 14, 16). In 2003, he moved to Princeton, NJ. (*Id.* at ¶ 14). While in Princeton, Mr. Daniels worked in a prominent local bicycle shop and developed friendships with other rowers who were also cycling enthusiasts. (*Id.* at ¶¶ 15-16). At this time, he made contact with Martin Crotty (*Id.* at ¶ 15) who would ultimately co-found a company named Princeton CarbonWorks that sells high

performance bicycle wheels, (D.I. 11 at ¶ 13). Princeton CarbonWorks (PCW-FL) was incorporated in Florida in March 2015. (*Id.*).

2.      From 2014 to 2019, Mr. Daniels was involved with PCW-FL in a number of capacities, including as an unpaid consultant, provider of bridge financing, director of business development, and chief operating officer. (D.I. 9-1 Ex. A at ¶¶ 19-36). In return for his effort, Mr. Daniels was initially offered a 10% stake in PCW-FL in 2017 (*id.* at ¶ 30), but after his first year of working with the company, in 2018, the PCW-FL board granted Mr. Daniels an 18.5% stake in the company, (*id.* at ¶¶ 35-36; D.I. 11 at ¶ 15). In March or April 2019, Mr. Daniels resigned from his role as the sole employee of PCW-FL. (D.I. 9-1, Ex. A at ¶ 37; D.I. 11 at ¶ 18).

3.      After his departure, PCW-FL failed to provide Mr. Daniels with any notices of corporate actions, or shareholder or director meetings. The directors of PCW-FL gave Mr. Daniels inconsistent, misleading and conflicting responses to his requests for records and confirmation of the value and extent of his ownership interest in the Florida corporation. (D.I. 9-1, Ex. A at ¶¶ 37-42).

4.      The remaining directors established a separate company, Princeton CarbonWorks, Inc. ("PCW-DE"), which was incorporated in Delaware on June 11, 2024, without informing Mr. Daniels and without providing him with any stock in the Delaware entity. (D.I. 11 at ¶ 20). On June 20, after an exchange of stock between the two companies, PCW-DE owned 93.15% of the shares in PCW-FL. (*Id.*). The following day, PCW-FL merged into PCW-DE, with PCW-DE being the surviving entity. (*Id.* at ¶ 21). As part of the merger, Mr. Daniels was offered $173,000 for his 185 shares in PCW-FL (*Id.* at ¶ 25). Mr. Daniels rejected this offer and on August 21, 2024, he withdrew from the PCW-FL appraisal process pursuant to the Florida statute section 607.1340, Other Remedies, for valuation of interests in a merger transaction. (*Id.* at ¶¶ 26-27).

5.      After attempts to resolve this dispute between counsel in Florida (D.I. 9-2, Ex. B at B-1), in response to an invitation to Mr. Daniels to again engage in settlement discussions, on January 7, 2025, Mr. Daniels sent a final letter to PCW-FL and the original founders of that company, attaching a proposed complaint and jury demand in the United States District Court for the Southern District of Florida, stating that these documents would be filed if information regarding PCW-FL's financials and shareholder records were not produced.  (*Id.*, Ex. B at B-2).

6.      Two days later, on January 9, 2025, without informing Mr. Daniels of its intention to do so, Plaintiff filed this matter in the Court of Chancery, seeking a declaration that Mr. Daniels has no ownership interest in PCW-DE.  (*See generally* D.I. 11).

7.      On the same day, after having received notice of the filing, Mr. Daniels filed a nine-count complaint and jury demand in the United States District Court for the Southern District of Florida against PCW-FL, PCW-DE, Mr.  Martin Crotty (the founder of PCW-FL), and two other founding members of the PCW-FL board.  (D.I. 9-1, Ex. A); *see also Daniels v. Crotty et al.*, Case No. 1:25-cv-20137-DPG (S.D. Fl.).

8.      The Florida litigation is presently pending, with the Florida District Court denying Defendants' motion to stay Rule 16, Rule 26 obligations and merit-based discovery pending resolution of their motion to dismiss and ordering the parties to a Judicial Settlement Conference with the Chief Magistrate Judge on May 13, 2025.  *Daniels v. Crotty et al.*, Case No. 1:25-cv-20137-DPG (S.D. Fl.) at D.I. 43; D.I. 46; D.I. 47.

9.      In the Florida litigation, Mr. Daniels seeks a declaration as to "[t]he extent and present fair market value of his interest in [PCW-FL] and [PCW-DE] and his ability to sell his interest to a third party.  (D.I. 9-1, Ex. A at ¶ 53).  In addition to seeking various remedies for breach of contract, breach of the implied covenants of good faith and fair dealing, and for

conversion, Mr. Daniels seeks remedies against the directors of PCW-FL for breaches of fiduciary duty based upon their actions as directors of the Florida corporation. (*Id.* at ¶¶ 61-67, 71-77).

10.    The FAC seeks corresponding declarations that: (1) Mr. Daniels "does not own stock or any other equity interest in" PCW-DE (D.I. 11 at ¶ 47); (2) his "percentage interest in [PCW-FL] prior to the Merger was 6.85%" (*id.* at ¶ 55); and (3) the value of his "interest in [PCW-FL] at the time of the Merger was $173,000[,]" (*id.* at ¶ 63).

## IV.    <u>ARGUMENT</u>

This dispute is about three non-Delaware founders attempting to squeeze-out a non-Delaware minority partner from his ownership in a Florida corporation. For two reasons, it should either be dismissed or transferred to the United States District Court for the Southern District of Florida. *First*, the court does not have personal jurisdiction over Mr. Daniels, because he is not a resident of Delaware. Moreover, as a minority shareholder in a Florida corporation claiming rights or attributes inherent to the stock in the Florida company and arising out of his ownership of that stock, Mr. Daniels has not availed himself of the jurisdiction of Delaware in accordance with due process. For that reason, the case should be dismissed. *Second*, whether the proposed merger is effective is an issue of Florida law (because the merged-out corporation is a Florida entity), and the contractual and equitable claims brought by Mr. Daniels are controlled by Florida law. PCW-DE's attempt to usurp jurisdiction from Florida's courts by anticipatorily filing this action should not be entertained. Had Mr. Daniels not shared the Florida Complaint in a good faith attempt to avoid litigation, this action would not have been filed.

### A.    The FAC should be dismissed for lack of personal jurisdiction

The FAC should be dismissed under Federal Rule of Civil Procedure 12(b)(2). Mr. Daniels does not reside in Delaware, and there is no other basis for a Delaware court to exercise personal jurisdiction over Mr. Daniels in relation to this matter.

5

### 1.    General Jurisdiction

Mr. Daniels is a resident of Pennsylvania, not Delaware.  (D.I. 3).[1]  The FAC does not allege that he maintains systematic and continuous contacts with the forum state, so no Delaware court has general personal jurisdiction over him.  *See Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197, 200–01 (3d Cir. 1998) ("[N]o party in this case contends that there is a basis for general jurisdiction in Pennsylvania—so we are free to consider solely whether the alternative form of personal jurisdiction is present: specific personal jurisdiction.").

### 2.    Specific Jurisdiction

The FAC does not sufficiently allege specific personal jurisdiction over Mr. Daniels under the Delaware long arm statute or through purported ownership of stock in a Delaware corporation.

### a)    Legal Standard

"Determining whether specific jurisdiction exists involves a three-part inquiry. First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citations, internal quotation marks, and brackets omitted).  This court has combined the first two of these factors into a statutory requirement under Delaware's long-arm statute.  "[I]n order for personal jurisdiction to exist over a defendant, two requirements, one statutory and one constitutional, must be satisfied." *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 402 (D. Del. 2002).  "First, a federal district court may assert personal jurisdiction over a nonresident of the

---

[1] The FAC alleges that "Daniels is a resident of a suburb of Philadelphia," (D.I. 11 at ¶ 12) but contains no mention of Pennsylvania, the state in which he resides.

state in which the court sits to the extent authorized by the law of that state." *Id.* at 402-04 (citing Fed. R. Civ. P. 4(e)). "Thus, the Court must determine whether there is a statutory basis for finding jurisdiction under the Delaware long-arm statute." *Id.* at 403 (citing 10 *Del. C.* § 3104(c)). "Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates [an individual's] constitutional right to due process." *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

### b)    There is no statutory basis for jurisdiction

The FAC does not allege facts sufficient to establish personal jurisdiction over Mr. Daniels under Delaware's long-arm statute.  The statute states:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>
> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 *Del. C.* § 3104(c).  The FAC alleges that "[l]ong-arm service on [Mr.] Daniels is appropriate pursuant to 10 *Del. C.* §3104(c)(5)[.]"  (D.I. 11 at ¶ 7).  But this is insufficient as a matter of pleading for two reasons.  First, it is unclear what Plaintiff is asserting in paragraph 7 of the FAC.  Second, to the extent Plaintiff is alleging that Delaware's long arm statute provides specific personal jurisdiction over Mr. Daniels, the allegations in the FAC fail to explain how the stock in a Delaware corporation is "real property" as is required by the long-arm statute.

The only remaining jurisdictional allegations in the FAC are that Mr. Daniels "claims to be a stockholder in Princeton-Delaware[,]" (D.I. 11 at ¶ 3); and that "[Mr.] Daniels has made allegations and threatened litigation regarding the following issues: (1) that the Merger that eliminated his interest in Princeton-Delaware was not an effective squeeze-out of his interest under Florida law; (2) that he disputes the percentage of ownership he had in Princeton-Florida; and (3) that he disputes the value of his ownership interest in Princeton-Florida[,]" (*id.* at ¶ 28).  None of these alleged statements are sufficient to establish jurisdiction over Mr. Daniels under Delaware's long-arm statute.

    c)    **The FAC fails to plead personal jurisdiction under the standard cited by Plaintiff**

The First Amended Complaint fails to adequately plead personal jurisdiction over Mr. Daniels, based upon ownership of stock in a Delaware corporation, for the simple reason that the FAC does not meet the pleading standard that Plaintiff asserts.  Specifically, the FAC does not allege that Mr. Daniels voluntarily purchased stock in a Delaware corporation, nor does it allege any facts that Mr. Daniels claims to assert a right inherent to the "attributes or characteristics" of stock in a Delaware corporation, such as voting rights, liquidation preferences, authenticity of certificates, or fiduciary duties.

It is well settled that ownership of stock in a Delaware corporation is insufficient to satisfy due process and to establish personal jurisdiction over an out-of-state stockholder. *Shaffer v. Heitner*, 433 U.S. 186, 216-17 (1977). However, courts have found the exercise of personal jurisdiction over nonresident shareholders to satisfy due process when certifying class actions involving breach of fiduciary duty claims.

> In my opinion, buying stock of a Delaware corporation (or a New York corporation, etc.) is itself a sufficient act to establish a nexus with the jurisdiction that creates and regulates the internal governance of that corporation to render it consistent with traditional notions of fairness to bind the holder of that stock as a plaintiff to adjudications *concerning the corporate rights that attach to that stock,* including the equitable right to require directors to act with loyalty to the corporation and its shareholders.

*Hynson v. Drummond Coal Co., Inc.*, 601 A.2d 570, 579 (Del. Ch. 1991) (emphasis in original).

The FAC alleges that "the due process requirements of minimum contacts with Delaware are satisfied because this action 'relat[es] *directly* to the *rights or attributes inherent in that stock*.'" (D.I. 11 at ¶ 6 (alteration in original) (quoting *OneScreen v. Hudgens*, 2010 WL 1223937, at *3 (Del. Ch. Mar. 30, 2010))).[2] This principle derives from the Court of Chancery's holding in *Hynson* as described above, but unlike *Hynson*, which involved the defendant "buying stock of a Delaware corporation," in *OneScreen*, the court did not find personal jurisdiction over a nonresident shareholder. *OneScreen v. Hudgens*, 2010 WL 12223937, at *6 (Del. Ch. Mar. 30, 2010) ("Because this action does not implicate the corporate process or the validity or attributes of OneScreen's stock, OneScreen has not alleged sufficient minimum contacts to support this Court exercising [personal] jurisdiction . . . and this case must be dismissed."). The *OneScreen*

---

[2] Elsewhere, the FAC cites the *Germaninvestments* case for a similar proposition. (D.I. 11 at ¶ 46), but this is just another quotation from *OneScreen*. *Germaninvestments AG v. Allomet Corp.*, 2020 WL 6870459, at *11 & n.123 (Del. Ch. Nov. 20, 2020) (quoting *Onescreen v. Hudgens*, 2010 WL 12223937, at *4-6 (Del. Ch. Mar. 30, 2010)).

court further clarified that "[a] stock's 'attributes or characteristics' may include such issues as **voting rights**, **liquidation preferences**, or **the authenticity of certificates**." *Id.* at *5 n.39 (emphasis added) (quoting *Hart Holding Co. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del.Ch.1991)) (citing *Hynson v. Drummond Coal Co.,* 601 A.2d 570, 579 (Del.Ch.1991)).

The facts as pleaded in the FAC do not establish a dispute over the "attributes or characteristics" of Mr. Daniels' interest in stock of the Delaware corporation. In fact, two of Mr. Daniels' alleged claims relate to the Florida entity (PCW-FL), not the Delaware corporation (PCW-DE). (D.I. 11 at ¶ 28 (alleging that Mr. Daniels disputes the percentage of his ownership in PCW-FL and the value of his ownership interest in PCW-FL)). The only purported claim in the FAC related to the Delaware corporation is that Mr. Daniels "claims to be a stockholder in Princeton-Delaware[.]" (*Id.* at ¶ 3).

With respect to the Delaware corporation (PCW-DE), the FAC does not allege that Mr. Daniels voluntarily purchased stock in the Delaware corporation. *Hynson*, 601 A.2d at 579. The FAC also does not allege that Mr. Daniels raises disputes over the "attributes or characteristics" of PCW-DE stock for the several reasons. First, the FAC does not allege that Mr. Daniels disputes the voting rights inherent to the PCW-DE stock. Second, the FAC does not allege that Mr. Daniels disputes the liquidation preferences of the PCW-DE stock. Third, the FAC also does not allege that Mr. Daniels challenges the validity of the PCW-DE stock, including the authenticity of the stock certificates. Fourth, and most importantly, the FAC does not allege that Mr. Daniels seeks to enforce another key right inherent to stock in a Delaware corporation: "the equitable right to

10

require directors to act with loyalty to the corporation and its shareholders."[3]  *Hynson*, 601 A.2d at 579.

The FAC alleges a single dispute related to the stock in the Delaware corporation, which is a dispute about ownership arising from the merger.  The only relief "Plaintiff seeks [is] a declaration that Defendant's ownership in [PCW-FL] was extinguished via the Merger, and that *he therefore owns no stock or other interest* in [PCW-DE]."  (*Id.* at ¶ 39 (emphasis added)).  Since the FAC does not allege a dispute over the "rights and attributes" of stock in a Delaware corporation, it does not adequately plead personal jurisdiction over Mr. Daniels.  *Onescreen*, 2010 WL 12223937, at *6.

### 3.    Conclusion

Mr. Daniels is a nonresident, and the FAC does not allege any other form of general jurisdiction over him.  Additionally, the FAC does not sufficiently allege any specific jurisdiction based upon Delaware's long arm statute.  And while the FAC alleges that Mr. Daniels' purported ownership of stock in PCW-DE is sufficient to establish jurisdiction, based upon the principle of *Hynson* as restated in *OneScreen*, the FAC fails for two reasons.  Mr. Daniels did not voluntarily purchase stock in a Delaware corporation.  *Hynson*, 601 A.2d at 579.  And the FAC does not allege any facts supporting a dispute over the "rights and attributes" of stock in a Delaware corporation.  *Onescreen*, 2010 WL 12223937, at *6.  For at least these reasons, Plaintiff has not met its burden

---

[3] To the extent that the principles discussed above represent an exception to the rule established in *Shaffer v. Heitner*, those principles suggests that courts of the state of incorporation would have jurisdiction over disputes such as breaches of fiduciary duties owed shareholders.  This is precisely the claim Mr. Daniels presently seeks to enforce in a Florida court as against the directors and officers of PCW-FL, based upon the rights inherent to his ownership of stock in the Florida corporation.  (D.I. 9-1, Ex. A at ¶¶ 61-67, 71-77); *cf. Hynson*, 601 A.2d at 579 (finding personal jurisdiction over non-resident shareholders for purposes of certifying a class-action claiming breach of fiduciary duties).

to establish that a Delaware court has personal jurisdiction over Mr. Daniels, and the First Amended Complaint should be dismissed.

**B.     Alternatively, this matter should be transferred to the United States District Court for the Southern District of Florida**

Should the Court find that it has personal jurisdiction over Mr. Daniels, this matter should be transferred to the Southern District of Florida, where the parallel litigation against Plaintiff, PCW-FL, Mr. Crotty and the other two directors/co-founders is pending.

"For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "[C]ourts [have] broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citation omitted).

**1.     This matter could have been brought in Florida**

"In determining whether transfer is appropriate, the Court must first determine whether this action could have been brought in the proposed transferee venue[.]"  *Intellectual Ventures I LLC v. Altera Corp.*, 842 F.Supp.2d 744, 750 (D. Del. 2012).  PCW-DE could have brought this action in the Southern District of Florida under the Declaratory Judgement Act, 28 U.S.C. § 2201, because the FAC seeks relief regarding PCW-DE's merger with PCW-FL, specifically under this statute.  (*E.g.*, D.I. 11 at ¶ 29); *see also Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citations omitted) ("The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition.").

Jurisdiction would have been appropriate in the Southern District of Florida under 28 U.S.C. § 1332, because the parties are diverse:  Mr. Daniels is a resident of Pennsylvania and PCW-DE is incorporated in Delaware, and the amount in controversy as alleged in the Notice of Removal (D.I. 1) exceeds $75,000.  Under the principle articulated in *Hynson*, repeated in *OneScreen*, and specifically cited in the FAC (D.I. 11 at ¶ 6), a Florida court would have personal jurisdiction over Mr. Daniels by virtue of his equitable claims for breaches of fiduciary duties associated with his ownership of stock in a Florida corporation, PCW-FL.  *See Hynson*, 601 A.2d at 579 ("[B]uying stock of a Delaware corporation (or a New York corporation, etc.) is itself a sufficient act to establish a nexus with the jurisdiction[.]"); *see also Siegmund v. Xuelian Bian*, 2018 WL 1611197 at *12-13 (S.D. Fla. Apr. 2, 2018) (holding the defendant directors that authorized a freeze-out merger of the minority shareholders were subject to Florida long-arm jurisdiction for breach of fiduciary duty claims).  Venue would have been appropriate in the Southern District of Florida under 28 U.S.C. § 1391(b), as "a substantial part of the events or omissions giving rise the claim occurred" in that district and the property that is the subject of the action is situated in that district.[4]

Although the Florida Complaint outlines a number of events and actions giving rise to Mr. Daniels' claims there (D.I. 9-1, Ex. A), the Delaware FAC turns the allegations of wrongdoing in Florida found in Counts II–VII of the Florida Complaint into only two disputes: (1) a dispute over the percentage ownership Mr. Daniels had in PCW-FL, and (2) a dispute over the value of Mr. Daniels' ownership in PCW-FL.  (D.I. 11 at ¶ 28).  Whether described as two disputes or Counts

---

[4] 14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3806 (4th ed. 2024) (footnotes omitted) ("The property clause of Section 1391(b)(2) is not often invoked and seems to have caused little trouble. In the margin are illustrative cases in which the property clause did and did not provide a basis for venue. Perusal of those cases shows that the property might be real or personal.").

II-VII of the Florida Complaint, this dispute largely concerns allegations of wrongdoing associated with a Florida entity and arising under the attributes and characteristics inherent to stock in a Florida corporation under Florida law.  After the merger, counsel for both parties and the accounting firm that prepared the valuation were in Florida, and Mr. Daniels' counsel in Florida shared the draft Florida Complaint with opposing counsel in Florida.  For these reasons, Plaintiff could have brought this same action for declaratory relief in the Southern District of Florida.

### 2.    The *Jumara* factors favor transfer

The convenience of the parties and witnesses as well as the interest of justice would be better served by transfer to the Southern District of Florida under 28 U.S.C. § 1404(a).  "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice. . . [T]he purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted).  When evaluating transfer, "courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"  *Jumara*, 55 F.3d at 879 (internal citations omitted).  The Third Circuit Court of Appeals has enumerated twelve private and public interest factors for district courts to consider.  *Id.* at 879-880.  The six private interests are:

> [1] plaintiff's forum preference as manifested in the original choice;
> [2] the defendant's preference; [3] whether the claim arose
> elsewhere; [4] the convenience of the parties as indicated by their
> relative physical and financial condition; [5] the convenience of the
> witnesses—but only to the extent that the witnesses may actually be

> unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted).  The six public interests are:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-880 (citations omitted).

### a)    Three private-interest factors favor transfer

In view of the Florida litigation, this case is an unnecessary inconvenience and expense for Mr. Daniels, who initially sought to resolve his entire dispute in a single forum with all necessary parties included.  (D.I. 9-1, Ex. A).  Rather than litigating there, Plaintiff rushed to file a complaint in the Court of Chancery to address in Delaware only a single aspect of the Florida litigation.  On this basis, the private-interest factors favor transfer.

### (1)    Plaintiff's forum preference

PCW-DE will likely argue that its choice of forum should be given deference because this action was filed before the Florida action.  "In those cases where two federal district courts have concurrent jurisdiction, the district court in which the first case was filed generally has jurisdiction." *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N.A., Inc.*, 350 F.Supp.2d 620, 623 (E.D. Pa. 2004) (citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)).  But courts have rejected the first filed rule "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum." *Id.* (citation and internal quotation marks omitted).  As discussed above, PCW-DE's action was slapped together, apparently in only a few days, in an attempt to usurp jurisdiction from Florida.  PCW-

DE was on notice that Mr. Daniels had drafted a thorough complaint seeking relief from the Southern District of Florida and intended to file it if settlement negotiations fell through. (D.I. 9-1, Ex. B at B-2). Rather than responding to Mr. Daniels, PCW-DE came to this Court seeking the same relief that Mr. Daniels stated he would be seeking from the Southern District of Florida, albeit without raising the other issues addressed in the Florida litigation. This factor favors transfer.

### (2)    Mr. Daniels preference

By virtue of pursuing his claim against PCW-FL in Florida and by initiating the Florida litigation, Mr. Daniels' obvious preference is to litigate in the Southern District of Florida. This factor favors transfer.

### (3)    Where the claim arose

Mr. Daniels' claim against PCW-DE in this litigation arose out of his ownership in PCW-FL, a Florida corporation, and out of acts by members of the Board of PCW-FL in diluting his ownership of PCW-FL and merging PCW-FL into PCW-DE pursuant to filings with the Florida Department of State. The Delaware FAC acknowledges that much of the dispute relates to PCW-FL. (D.I. 11 at ¶ 28 ("Daniels has made allegations and threatened litigation regarding the following issues: . . . (2) that he disputes the percentage ownership he had in Princeton-Florida; and (3) that he disputes the value of his ownership in Princeton-Florida")). This factor favors transfer. *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 481 (D. Del. 2011) ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." (quotation omitted).

### (4)    The remaining private-interest factors

The remaining private-interest factors are neutral. Other than the fact that PCW-DE is incorporated in Delaware, there is no evidence that it maintains offices in Delaware. Mr. Daniels

16

is a Pennsylvania resident. The witnesses, who are also defendants in the Florida litigation are residents of Connecticut, New Jersey, and Rhode Island. (D.I. 9-1, Ex. A at ¶ 4) Both Delaware and Florida are inconvenient for these witnesses, and there is no evidence that any witness would be unavailable for trial in either jurisdiction. On this basis, the remaining private-interest factors are neutral.

> **b)    Three public-interest factors favor transfer**

Three of the public-interest factors favor transfer, and the others are neutral. Mr. Daniels owned stock in a Florida corporation pursuant to Florida's statutory scheme and filings with the Florida Department of State. The Florida corporation merged into a Delaware corporation. Based upon conduct prior and in connection with the merger, Mr. Daniels sought to resolve the dispute in Florida. As a result of that, he was sued in Delaware. Based upon these facts, the public-interest factors favor transfer.

> **(1)    Practical considerations**

The practical considerations favor transfer. In the Florida litigation, Mr. Daniels raises numerous other disputes with PCW-DE and nonparties to this litigation, PCW-FL, Mr. Crotty and two other PCW-FL Board members. (*See generally* D.I. 9-1, Ex. A). The Delaware FAC also raises, but does not seek to resolve, the Florida disputes. (D.I. 11 at ¶ 28 ("Daniels has made allegations and threatened litigation regarding the following issues: (1) that the Merger that eliminated his interest in Princeton-Delaware was not an effective squeeze-out of his interest; (2) that he disputes the percentage of ownership he had in Princeton-Florida; and (3) that he disputes the value of his ownership interest in Princeton-Florida.")). These disputes arise out of the same set of operative facts and are best litigated together, as Mr. Daniels has sought to do in the Florida litigation. To retain this litigation in Delaware would require the parties to litigate the same dispute in two separate fora. *Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 359 (D. Del. 1999)

("[T]rying essentially the same legal action in two separate fora would needlessly duplicate the efforts and expenses of not only the parties but also the corresponding courts.").

### (2)     Local interest

The local interest factor favors Florida, because this is a dispute over conduct related to the operation and sale of a Florida corporation, in Florida, and under Florida law.  Of the 3 counts raised, 2 relate to the Florida corporation (D.I. 11 at ¶¶ 48-63), and only one relates to the Delaware corporation, (*id.* at ¶¶ 38-47).  Given that these disputes ultimately relate to Florida law, the local interest favors transfer.

### (3)     Public policy

Public policy favors Florida, because a Florida court has an interest in deciding issues of Florida law, including specifically "adjudications *concerning the corporate rights that attach to []* *stock,* including the equitable right to require directors to act with loyalty to the corporation and its shareholders." *Hynson*, 601 A.2d at 579.  In *Hynson*, Chancellor Allen reasoned that purchasing stock in a corporation should "establish a nexus" between a nonresident shareholder and the state of incorporation for these types of claims.  *Id.*  This is precisely the type of remedy that Mr. Daniels seeks with his breach of fiduciary duty claims in the Florida Complaint.  (D.I. 9-1, Ex. A at ¶¶ 61-67, 71-77).

### (4)     The remaining public-interest factors

The remaining factors: the enforceability of the judgment, court congestion, and the familiarity of the trial judge are likely neutral and neither favor nor disfavor transfer.

### c)     Balancing the *Jumara* factors

Weighing and analyzing the *Jumara* factors is done on a case-by-case basis.  *Jumara*, 55 F.3d at 883.  Here, as explained above, six of the twelve *Jumara* factors weigh in favor of

transfer, six are neutral, and none weigh against transfer.  Accordingly, under *Jumara*, this action should be transferred to the Southern District of Florida.

## V.    <u>CONCLUSION</u>

For the reasons stated above, Mr. Daniels respectfully requests that the Court either dismiss this action for lack of personal jurisdiction or transfer it to the United States District Court for the Southern District of Florida where all outstanding issues and disputes between the parties may be resolved.

Dated: March 21, 2025

*Of Counsel*:

WEISSMAN & DERVISHI, P.A.
Brian S. Dervishi
One SE Third Avenue, Suite 1700
Miami, Florida 33131
305-347-4070
bdervishi@wdpalaw.com

SMITH KATZENSTEIN & JENKINS LLP

*/s/ Daniel A. Taylor*
David A. Jenkins (No. 932)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
daj@skjlaw.com
dat@skjlaw.com

*Attorneys for Defendant Paul Daniels*