**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PRINCETON CARBONWORKS, INC., a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 1:25-cv-00131-RGA |
| PAUL DANIELS, | ) ) | |
| Defendant. | ) ) | |

**ANSWERING BRIEF IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO DISMISS AND/OR TRANSFER</u>**

<div align="right">

Francis G.X. Pileggi (No. 2624)
Aimee M. Czachorowski (No. 4670)
LEWIS BRISBOIS BISGAARD &
SMITH LLP
500 Delaware Avenue, Suite 700
Wilmington, DE 19801
(302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Aimee.Czachorowski@LewisBrisbois.com

*Attorneys for Plaintiff*

</div>

Dated: April 4, 2025

i

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.      Nature and Stage of the Proceedings ...................................................................1

II.     Summary of Argument ..........................................................................................2

III.    Statement of Facts .................................................................................................2

IV.     Argument ...............................................................................................................3

        A.      This Court has Jurisdiction .........................................................................3

                1.      In *Personam, Quasi In Rem* or *In Rem* Jurisdiction...................................4

                2.      This Court may exercise *In Rem* jurisdiction and Defendant fails to
                        acknowledge the statutory basis for jurisdiction............................................8

        B.      This matter should not be transferred to the United States District Court
                for the Southern District of Florida...........................................................9

                1.      Florida has no statutory basis for jurisdiction over directors or
                        officers of a Florida corporation ..............................................................11

                        (a)     Fla. Stat. § 48.193(1)(a)(1) is Not Satisfied..................................11

                        (b)     The Florida Court Lacks Personal Jurisdiction and
                                Jurisdiction Based on Florida's Corporate Shield Doctrine. .........12

                        (c)     The *Jumara* factors do not favor transfer ......................................13

V.      Conclusion ...........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761 (D. Del. 1975).........................14

*Doe v. Thompson*, 620 So.2d 1004 (Fla. 1993) .............................................................12

*Feeley v. NHAOCG, LLC,*
  2012 WL 966944 (Del. Ch. Mar. 20, 2012)..........................................................3, 5

*F.T.C. v. Graco, Inc.*, 2012 WL 3584683 (D.D.C. Jan 26, 2012) .................................15

*Graphics Properties Holdings, Inc. v. Asus Computer International*, 964
  F.Supp.2d 320 (D. Del 2013) ....................................................11, 13, 14, 17

*Greene v. Johnson*, 99 A.2d 627 (Del. 1953) ................................................................3

*Haft v. Dart Gp. Corp.,* 1996 WL 255899 (Del. Ch. Apr. 26, 1996)  ............................5

*Hart Holding Co. v. Drexel Burnham Lambert, Inc.,*
  1992 Del. Ch. LEXIS 112 (Del. Ch. May 28, 1992) .......................................6, 7, 8

*HMG/Courtland Props., Inc. v. Gray,* 729 A.2d 300 (Del. Ch.1999) ...........................3

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,*
  421 F.3d 1162 (11th Cir. 2005) ...............................................................12

*Hynson v. Drummond Coal Co.*, 601 A.2d 570, 579 (Del. 1991)...................................8

*Intellectual Ventures I LLC v. Altera Corp.*,
  842 F.Supp.2d 744 (D. Del. 2012).........................................................16

*International Shoe Co. v. State of Wash., Office of Unemployment Compensation
  and Placement*, 326 U.S. 310 (1945).........................................................4

 *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) ....................... *passim*

*La. State Emps.' Ret. Sys. v. Citrix Sys.*, 2001 Del. Ch. LEXIS 2 (Jan. 5, 2001) ..........17

*Lane v. XYZ Venture Partners, L.L.C.,*
  322 Fed. Appx. 675 (11th Cir. 2009)....................................................12

*McMillan v. Nelson*,
  2024 WL 3311812 (Del. Ch. July 5, 2024)..............................................8

*MEC Resources, LLC v. Apple, Inc.*,
    269 F. Supp. 3d 218 (D. Del. 2017)........................................................................15

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
    288 F.3d 1264 (11th Cir. 2002) ...............................................................................12

*Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026 (D. Del. Feb. 13, 2015) ....................15

*OneScreen Inc. v. Hudgens*,
    2010 WL 1223937 (Del. Ch. Mar. 30, 2010)........................................................7, 8, 9

*Samsara Inc. v. Motive Technologies, Inc.*,
    2024 WL 3822981 (D. Del. Aug. 14, 2024) ...........................................................14

*Shaffer v. Heitner*,
    433 U.S. 186 (1977)......................................................................................6, 8

*Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) ...............................................1, 13, 14

*In re Stream TV Networks, Inc. Omnibus Agreement Litig.*,
    283 A.3d 1183 (Del Ch. 2022).........................................................................8, 9

*Trustees of Columbia Univ. in City of New York v. Ocean World S.A.*,
    12 So.3d 788 (Fla. 4th DCA 2009) ...................................................................12

*United States v. Energy Solutions, Inc.*,
    2016 WL 7397069 (D. Del. Dec. 21, 2016).........................................................14

*United States v. United States Sugar Corporation*,
    2022 WL 354228 (D. Del. Jan. 11, 2022)........................................................11, 14, 15, 17

**Statutes**

6 *Del. C.* § 18-110...........................................................................................................4

8 *Del. C.* § 111 ...............................................................................................................1

8 *Del. C.* § 169 ...........................................................................................................1, 3, 6, 8

8 *Del. C.* § 225 ...........................................................................................................4, 5

8 *Del. C.* § 259(a)......................................................................................................1, 10, 14

10 *Del. C.* § 3114 ........................................................................................................6

10 *Del. C.* § 3104 ........................................................................................................6

Fla. Stat. § 48.193(1)(a)(1) .........................................................................................11

Fla. Stat. §§ 607.1101 ...............................................................................................2, 10

Fla. Stat. § 607.1106(1)(b) and (c) .........................................................................2, 10

## Other Authorities

R. Franklin Balotti & Jesse A. Finkelstein, 1 *The Delaware Law of Corporations & Business Organizations* (2025) ...............................................................................8

Donald J. Wolfe & Michael A. Pittenger, 1 *Corp & Commercial Practice in the Delaware Court of Chancery* (2025) ....................................................3, 4, 5, 6, 16

Wright & Miller, 4A *Fed. Prac. & Proc. Civ.* § 1072 (4th ed.) .......................................4

I.    **Nature and Stage of the Proceedings**

This case is about Daniels' claiming ownership in Princeton CarbonWorks, a Delaware corporation ("Princeton-Delaware") based on his ownership of a now-defunct Florida corporation which was merged out of existence. The long-arm statutes and Delaware corporate law[1] gives Delaware courts both *in personam* and *in rem* or *quasi in rem* jurisdiction to force parties who claim a right in Delaware stock to come to Delaware to litigate those issues. None of the shareholders work or live in Florida. The Florida company no longer exists. Daniels' claims in Florida are not to unwind the merger, but to seek the value of his shares and the ability to transfer his shares—i.e., claims that go to the nature and attributes inherent in Delaware stock. For example, in the Florida Complaint, Daniels seeks a declaration concerning "the extent and fair market value of his interest in Princeton Carbon Works and Princeton CarbonWorks DE and his ability to sell his interest to a third party[.]" Ex. A, Florida Complaint, ¶ 53(a).

Should Daniels win in Florida, he would need to sue in Delaware to collect against Princeton-Delaware.

After two years of employment with Princeton-Florida, in April of 2019, Daniels resigned, but remained a minority shareholder in Princeton-Florida. Nearly six years after his resignation, and more than six months after the extinguishment of his Princeton-Florida stock due to a merger of Princeton-Florida into Princeton-Delaware, Daniels notified the Company that he intended to assert a claim that he owns stock in the Delaware entity post-merger. Princeton-Delaware brought

---

[1] Section 111 of the Delaware General Corporation Law provides this Court power to determine issues regarding ownership of stock in a Delaware corporation. Am. Compl. ¶ 10. 8 *Del. C.* §169 provides that "the situs of the ownership of the capital stock of all corporations existing under the laws of this State [] shall be regarded as in this State." *Id.* ¶ 9. Section 259(a) of the Delaware General Corporation Law provides that Delaware-Princeton, as the resulting corporation of the merger between Princeton-Florida and Princeton-Delaware, possesses the rights of Princeton-Florida, including the right to a determination of the ownership of its stock. *Id.* ¶ 8.

this declaratory judgment action in Delaware—the only venue in which jurisdiction could be asserted over all parties. Daniels subsequently filed suit in Florida, asserting that he is entitled to shares of Princeton-Delaware and other claims.[2]

On March 21, 2025, Daniels moved to dismiss the First Amended Complaint, and, in the alternative, to transfer this matter to the District Court for the Southern District of Florida. This Answering Brief of Princeton CarbonWorks opposes Daniels' Motion to Dismiss and/or Transfer.

## II.    Summary of Argument

Princeton-Delaware seeks a declaration that Daniels does not own any shares of stock of the Company, contrary to his claims. This action does not involve, nor does it depend on, *in personam* jurisdiction, but is rather a *quasi in rem* or *in rem* action, involving the ownership of stock in a Delaware corporation. Delaware courts have recognized that the exercise of jurisdiction would be appropriate to resolve issues regarding the existence or ownership of stock of a Delaware corporation. The stock at issue is located—by statute—in Delaware.

## III.    Statement of Facts

Neither Princeton-Delaware, any of its officers or directors, nor Daniels reside in Florida. (Am. Compl. ¶ 11, Ex. A ¶¶5-8). Princeton-Delaware is a Delaware corporation with its principal place of business in Connecticut. (Am. Compl. ¶ 2, Ex. A ¶ 9). Daniels is a resident of Pennsylvania. (Am. Compl. ¶ 12, Ex. A, Florida Complaint, ¶ 5). No party to the Florida suit[3] resides or works in Florida. (Ex. A, ¶¶ 5-9).

---

[2]  A Motion to Dismiss based partially on lack of jurisdiction and venue and a Motion to Drop Improper Party are both still pending in the Florida court. The Florida court recently denied a motion to stay that case, reasoning that the discovery will be substantially similar in both the Delaware and Florida cases.

[3] Princeton-Florida is defunct and both its rights and obligations passed to Princeton-Delaware by operation of both Florida and Delaware law. Fla Stat. §607.1106; 8 *Del. C.* § 259(a).

In connection with a 2024 merger of Princeton-Florida into Princeton-Delaware, Daniels, a former employee of Princeton-Florida and a minority shareholder, was offered fair value for his shares in connection with the merger, and his shares were extinguished. (Am. Compl. ¶¶ 21-26).

Daniels claims ownership of stock in a Delaware corporation. The situs of stock in a Delaware corporation is deemed to be in Delaware. Because the claims relate to the existence, nature, and attributes of that stock, jurisdiction in this Court is appropriate.

## IV. Argument

Although this case is based on *in rem* jurisdiction, this Court may exercise jurisdiction over Daniels by alleging that "service of process is authorized by statute [and that] the exercise of personal jurisdiction [] comport[s] with the due process clause of the Fourteenth Amendment." *Feeley v. NHAOCG, LLC*, 2012 WL 966944, at *4 (Del. Ch. Mar. 20, 2012) (citing *HMG/Courtland Props., Inc. v. Gray,* 729 A.2d 300, 303 (Del. Ch.1999)).

The Amended Complaint explains why this Court may resolve the ownership dispute over the Delaware stock at issue pursuant to 6 *Del. C.* § 169 in connection with the request for a declaration that no shares of Princeton-Delaware have been issued to Daniels. "While the term "property," as used in the [long-arm] statute, clearly pertains to real and tangible personal property, it also applies to intangible property such as stock." Donald J. Wolfe & Michael A. Pittenger, 1 *Corp & Commercial Practice in the Delaware Court of Chancery* § 3.03, at 3-32 (2025) (citing *Greene v. Johnson*, 99 A.2d 627 (Del. 1953)). It is proper to exercise jurisdiction over Daniels' claims to own stock in Princeton-Delaware for the purpose of declaring that no such interest exists.

### A. This Court has Jurisdiction

Delaware courts have for years considered the question of whether ownership of stock in a Delaware corporation, without further contacts with the state, can support the exercise of

jurisdiction. The reasoning has evolved over time to conclude in recent years that "jurisdiction over a holder of shares of stock in a Delaware corporation based solely upon the statutory situs of those shares in Delaware would be constitutionally permissible *only* where the cause of action relates to specific rights or characteristics inherent in the shares[.]" Donald J. Wolfe & Michael A. Pittenger, 1 *Corp & Commercial Practice in the Delaware Court of Chancery* § 3.03[d][3], at 3-32 (2025). That is precisely the case here—the cause of action is to determine specific alleged rights Daniels claims that are inherent in the shares of Princeton-Delaware. That makes the exercise of jurisdiction permissible.

### 1. *In Personam, Quasi In Rem* or *In Rem* Jurisdiction

Jurisdiction in this matter would be appropriate either under a theory of personal jurisdiction based on Daniels' claims to own intangible property within the state—i.e., ownership of stock in a Delaware corporation, or under a theory of *quasi in rem* or *in rem* jurisdiction based on the situs of the stock itself. It is not necessary to have both. As the long-arm statute indicates, and as illustrated by a leading federal practice treatise: "The presence of property may suggest contacts sufficient to permit an exercise of jurisdiction in those cases in which the defendant's property interest within the state, whether tangible or intangible, is related directly to the plaintiff's cause of action." Wright & Miller, 4A *Fed. Prac. & Proc. Civ.* § 1072 (4th ed.) (discussing *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 319 (1945)).

In the analogous context of 6 *Del. C.* §18-110 and 8 *Del. C.* § 225, Delaware courts have held that it is not necessary for the court to have personal jurisdiction over a party if *in rem* jurisdiction exists. Delaware courts have held that "it is not necessary for all claimants to the office to be subject to the Court's *in personam* jurisdiction in order for the Court to make an authoritative

4

determination" because the proceeding decides rights to a corporate office over which the court has jurisdiction. *Feeley v. NHAOCG, LLC*, 2012 WL 966944, at *5 (Del. Ch. Mar. 20, 2012) (citing *Haft v. Dart Gp. Corp.,* 1996 WL 255899, at *2 (Del. Ch. Apr. 26, 1996)) (interpreting 8 *Del. C.* § 225). In that case, Vice Chancellor Laster stated: "The defendants in such a proceeding appear before the Court "not individually, but rather, as respondents being invited to litigate their claims to the *res* (here, the disputed corporate office) or forever be barred from doing so." *Id.*

Because the action relates directly to the existence of and ownership of the stock, an analysis of both bases for jurisdiction may be unnecessary. "[T]he availability of *quasi-in-rem* jurisdiction usually is superfluous because most long-arm statutes either expressly allow full *in personam* jurisdiction to be exercised over a nonresident defendant in actions arising out of his ownership, use, or possession of local property, or do so indirectly because they reach to the full extent of what is permitted under the Due Process Clause." *Id.*

Moreover, Daniels is purposely invoking contacts by claiming rights to ownership of stock in a Delaware corporation. Constitutionally permissible exercise of jurisdiction can exist where, as here, Daniels' claims to Princeton-Delaware's stock "manifest[] the nonresident defendant's purposeful invocation of the benefits and protections of Delaware law in connection with the transaction that is the subject matter of the litigation." Donald J. Wolfe & Michael A. Pittenger, 1 *Corp & Commercial Practice in the Delaware Court of Chancery* § 3.03[d][3], at 3-33 (2025). Daniels has sought a declaration concerning the value of his shares and the ability to transfer his shares—claims that go directly to the nature and attributes inherent in Delaware stock. Ex. A, ¶ 53(a). In seeking such a declaration, Daniels both demonstrates that the claims relate to the existence, nature and attributes of the stock, which satisfies the jurisdictional inquiry, and confirms that jurisdiction is appropriate because he invokes the protection of Delaware law as a stockholder.

Prior to the enactment of 10 *Del. C*. §§3114 and 3104, the director and officer consent statute and Delaware's long-arm statute, there was no direct mechanism by which the courts could exercise *in personam* jurisdiction over non-resident defendants. Donald J. Wolfe & Michael A. Pittenger, 1 *Corp & Commercial Practice in the Delaware Court of Chancery* § 3.03[a], at p. 3-14 (2025). To assert *in rem* and *quasi in rem* jurisdiction, prior to the long-arm statute, parties could only rely upon Section 169 of the DGCL, which "treat[s] Delaware as the situs of capital stock in a Delaware corporation." *Id*.

While the most recent jurisprudence supports jurisdiction in cases where the nature or ownership of the stock itself is at issue, the caselaw has evolved on this point. The United States Supreme Court rejected arguments in *Shaffer v. Heitner*, 433 U.S. 186 (1977), that ownership of stock seized could form the sole basis for jurisdiction because the stock had no relationship to the subject matter of the suit. *Id*., (citing *Shaffer*, 433 U.S. at 213, 218). These are not our facts. The *Shaffer* decision left open the possibility that jurisdiction could properly be exercised where the underlying cause of action was directly related to the stock, stating: "For example, when claims to the property are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Id*. at 207. So too here.

Daniels' Motion to Dismiss ignores important Delaware precedent post-*Shaffer* that considered the very question at issue here, despite the fact that those cases are cited in the Amended Complaint.

After the *Shaffer* decision, Delaware courts continued to examine the question of whether the situs of stock in Delaware could alone create sufficient minimum contact to allow the constitutional exercise of jurisdiction. Two decisions by Chancellor Allen in *Hart Holding Co. v.*

6

*Drexel Burnham Lambert, Inc.*, marked an evolution on this issue. In the first, Chancellor Allen noted that both the U.S. Supreme Court and the Delaware Supreme Court had left the issue of jurisdiction based on stock situs open. The first decision addressed whether the plaintiff's asserted theories of jurisdiction were frivolous, and he noted: "[w]here the action is one to determine the validity or ownership of stock, or the existence of rights to exercise power with respect to the stock (*e.g.*, voting), the ownership of stock in a Delaware corporation alone would arguably qualify as a "contact" with the jurisdiction that would count in assessing amenability to suit here." *Hart Holding Co.*, 593 A.2d 535, 543. Although the exercise of jurisdiction in that case was found to be improper, because the underlying case related to a fraud in the issuance of the stock, Chancellor Allen indicated that where the validity or attributes of the stock itself were at issue, jurisdiction could be proper. He stated that: "where the subject matter of the litigation involves the legal existence of stock in a Delaware corporation, or its character or attributes (*e.g.,* its validity [] etc.), I am convinced that ownership of the stock, without more, will ordinarily be sufficient to satisfy the dictates of common fairness to permit binding adjudication in this court of such claim, without regard to where the holder may reside." *Hart Holding Co. v. Drexel Burnham Lambert, Inc.*, 1992 Del. Ch. LEXIS 112, *21-22 (Del. Ch. May 28, 1992).

Later, the Court of Chancery held that due process considerations could be satisfied by owning stock in a Delaware corporation where "the connection between the forum (Delaware), the defendant (an owner of stock in a Delaware corporation), and the litigation (judicial determination of attributes of stock based on, *e.g.,* the governing documents of a Delaware corporation) quite possibly would justify an exercise of *in rem* jurisdiction "over the interests of persons in" that stock." *OneScreen Inc. v. Hudgens*, 2010 WL 1223937, at *5 (Del. Ch. Mar. 30, 2010).

Most recently, the Court of Chancery explicitly held that: "Shares of stock in a Delaware corporation are personal property within the jurisdiction of the Court. *See* 8 *Del. C.* § 169. [The Company] is a Delaware corporation. The Shares are therefore within the jurisdiction of the Court." *In re Stream TV Networks, Inc. Omnibus Agreement Litig.*, 283 A.3d 1183, 1193 (Del Ch. 2022).

This case is an example of the exception to the general holding in *Shaffer*, as explained in *Hart Holding* and *OneScreen*, and confirmed in *In re Stream TV*. Here, Daniels claims to own stock in a Delaware corporation as the result of a merger of Princeton-Florida into Princeton-Delaware, and the only issue is the existence—or not—in Delaware of the shares he claims an interest in. This fact-specific analysis is analogous to the facts described by Chancellor Allen in *Hart Holding* and by Vice Chancellor Parsons in *OneScreen*.

### 2. This Court may exercise *In Rem* jurisdiction and Defendant fails to acknowledge the statutory basis for jurisdiction

"For all purposes of title, the situs of the ownership of the shares of stock in every Delaware corporation is within the State of Delaware." R. Franklin Balotti & Jesse A. Finkelstein, 1 *The Delaware Law of Corporations & Business Organizations*, §5.18, at 5-59 (2025).[4]

The Court of Chancery has instructed that:

---

[4] Delaware courts often exercise jurisdiction over nonresidents whose only connection to Delaware is the purchase of stock in a Delaware corporation. *See* Wolfe, § 3.03[d][3], n. 140 ("buying stock of a Delaware corporation [] is itself a sufficient act to establish a nexus with the jurisdiction that creates and regulates the internal governance of that corporation to render it consistent with traditional notions of fairness to bind the holder of that stock as a plaintiff to adjudications *concerning the corporate rights that attach to that stock* … it is not unreasonable—not inconsistent with traditional notions of fairness[.]") (quoting *Hynson v. Drummond Coal Co.*, 601 A.2d 570, 579 (Del. 1991)). To the extent Daniels intends to claim there is no jurisdiction over him because he only claims to own stock, an analogy can be found in the provisions of the LLC Act providing a basis for personal jurisdiction for those *claiming* the title of manager of an LLC but not actually serving as such. *See McMillan v. Nelson*, 2024 WL 3311812, at *5 (Del. Ch. July 5, 2024).

> "The Court may not simply disregard the minimum contacts inquiry even in an action that relates directly to the legal existence of stock or its character or attributes. Rather, in a limited number of situations, ownership of stock in a Delaware corporation may, by itself, be a sufficient minimum contact to satisfy the demands of due process. In such a case, the connection between the forum (Delaware), the defendant (an owner of stock in a Delaware corporation), and the litigation (judicial determination of attributes of stock based on, *e.g.,* the governing documents of a Delaware corporation) quite possibly would justify an exercise of *in rem* jurisdiction "over the interests of persons in" that stock."

*OneScreen Inc. v. Hudgens*, 2010 WL 1223937, at *5 (Del. Ch. Mar. 30, 2010).

The *In re Stream TV* decision, explicitly holding that "[s]hares of stock in a Delaware corporation are personal property within the jurisdiction of the Court" confirms that *in rem* jurisdiction exists here. *In re Stream TV*, 283 A.3d at 1193.

Princeton-Delaware has met its burden to demonstrate that *in rem* jurisdiction exists.

In addition, Daniels himself, in making a claim that he is the owner of Princeton-Delaware stock, has invoked the benefits and protections of Delaware law and subjects himself to its jurisdiction. *See* Wolfe, § 3.03[d][3].

Despite the varied nature of Daniels' Florida claims, in colloquy with the Florida Court, in an attempt to clarify the nature of the remedies sought, Daniels admitted that he is only seeking monetary damages. Ex. B at. 13:4 ("I just want a damage award."). If he won, he would need to come to Delaware to collect assets of Princeton-Delaware.

### B. This matter should not be transferred to the United States District Court for the Southern District of Florida

Daniels asserts that Princeton-Delaware's filing of the declaratory judgment action in the Delaware Court of Chancery was an attempt at forum shopping. Not so. Rather, Princeton-Delaware, when it became apparent that Daniels' claims could not be resolved, sought a declaration in the only state that has jurisdiction over all parties in this case. Daniels has never lived or worked in Florida and Princeton-Delaware could not have brought suit against him there.

Daniels was never an officer of Princeton-Florida, and, even if he had been, Florida has no jurisdictional statute similar to that of Delaware that imposes jurisdiction on directors and officers. Jurisdiction over the directors and officers of Princeton-Delaware, who are named in the Florida suit, is appropriate in Delaware, and the Florida Defendants have requested that the Florida case be transferred to Delaware because it is the forum in which jurisdiction is appropriate over all parties.

Princeton-Delaware, as the corporation surviving the merger, assumes the rights and obligations of Princeton-Florida post-merger. *See* DGCL § 259(a), Am. Compl. ¶ 8, Ex. B at 4-5. Daniels freely admits that he is seeking monetary damages in the Florida action. Ex. B at 13:4 ("I just want a damage award."). Should any damages award result from his claims, any judgment would be executed in Delaware. There are no assets in Florida. That very issue prompted the Florida court to ask: "If you're just seeking damages from the Delaware company, why is this in the Southern District of Florida the appropriate place to litigate this as opposed to Delaware, if the parties are all in Delaware, if the primary Defendant who would arguably pay damages is in Delaware, why would this case be appropriate for the Southern District of Florida?" Ex. B at 13:8-13.

Princeton-Delaware is not subject to suit in Florida. Princeton-Florida[5] is defunct (*See* Ex. B. ¶¶ 9, 46; Fla. Stat. §§ 607.1101, 607.1106(1)(b) and (c)), and none of the directors of Princeton-Delaware are subject to jurisdiction in Florida. Florida's corporate shield doctrine also precludes a finding that the Florida Court has personal jurisdiction over Crotty, Macris, and Werntz. All of

---

[5] Princeton-Florida was incorporated in Florida was because the founder's father-in-law who practiced law in South Florida prepared the incorporation documents for free. There was no other personal or business reason. Ex. B p. 6.

the directors live in the northeastern part of the United States *Id.* ¶¶ 6-8, and Daniels himself lives in the suburbs of Philadelphia. *Id.* ¶ 5.

"The party seeking transfer bears the burden to establish that a balancing of proper interests weighs in favor of transfer. … The Third Circuit has held, however, that unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *United States v. United States Sugar Corporation*, 2022 WL 354228, at *2 (D. Del. Jan. 11, 2022) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970)).

The provisions of 28 U.S.C. § 1404(a) were "intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer" to another district where a claim might have been brought. *Graphics Properties Holdings, Inc. v. Asus Computer International*, 964 F.Supp.2d 320 (D. Del 2013) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995)). The instant case could not have been brought in Florida and should not be transferred there.

### 1. Florida has no statutory basis for jurisdiction over directors or officers of a Florida corporation

Although Daniels attempts to persuade this Court that jurisdiction would be appropriate in Florida, his Florida Complaint lacks any factual support for any basis for jurisdiction.[6]

#### a. Fla. Stat. § 48.193(1)(a)(1) is Not Satisfied.

There is no personal jurisdiction in Florida over Princeton-Delaware or any of the other Florida Defendants due to their alleged business conduct in Florida.[7] "In order to establish that a defendant is carrying on business for the purpose of the long-arm statute, the activities of the

---

[6] The Florida Complaint is attached as Ex. A. The transcript of the Florida hearing on the Florida Defendants' Motion to Stay is attached as Ex. B.

[7] The Florida Defendants have a pending Motion to Dismiss and Motion to Drop Improper Party based on jurisdictional arguments.

defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (internal quotations omitted); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 n.6 (11th Cir. 2002). "Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth*, 421 F.3d at 1167 (internal citations omitted).

The Florida Defendants have only limited and sporadic, if any, contacts with the State of Florida. Neither Princeton-Florida nor Princeton-Delaware have ever had a Florida office; only minimal sales to customers and some retailers have ever been made in Florida; neither Princeton-Florida nor Princeton-Delaware have directed any marketing, advertising or sponsorship dollars into Florida.

### b. The Florida Court Lacks Personal Jurisdiction and Jurisdiction Based on Florida's Corporate Shield Doctrine.

None of the Florida defendants, in their corporate capacity or as individuals, have sufficient minimum contacts with Florida to be sued there.

Unlike Delaware, in Florida, service as directors in a Florida corporation cannot alone establish personal jurisdiction. Florida's "corporate shield doctrine prohibit[s] the exercise of jurisdiction under the Florida long-arm statute over corporate employees whose only conduct in Florida was in furtherance of a corporation's interests." *Lane v. XYZ Venture Partners, L.L.C.*, 322 Fed. Appx. 675, 678 (11th Cir. 2009) (citing *Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993)).

Neither can the limited contacts with Florida resulting from incorporating in Florida convey personal jurisdiction over the Florida Defendants. *Trustees of Columbia Univ. in City of*

*New York v. Ocean World S.A.*, 12 So.3d 788, 795 (Fla. 4th DCA 2009). In their individual capacities, Crotty, Macris, and Werntz have no business ventures in Florida, nor have they engaged in activities in Florida that would establish jurisdiction.

### c. The *Jumara* factors do not favor transfer

In considering a § 1404(a) motion, a two-step analysis is performed. "First, the Court determines whether the action could have been brought in the proposed transferee forum. Next, the Court must balance the appropriate considerations and determine whether, under the particular facts of the case, the request to transfer venue should be granted." *Graphics Properties*, 964 F.Supp.2d at 324 (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970) and *Jumara,* 55 F.3d at 879).

As explained above, this case could not have been brought in Florida. The inquiry into transfer can end there, as the first factor is not satisfied.

Should this Court determine that the case could have been brought in Florida, and examines the second part of the analysis, it must consider the balancing of private and public interest factors identified by the Third Circuit in *Jumara*:

> The private factors include: (1) "the plaintiff's forum preference as manifested in the original choice;" (2) "the defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

> The public interest factors include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" and (5) "the familiarity of the trial judge with the applicable state law in diversity cases."

*Graphics Properties,* 964 F. Supp. 2d at 325 (quoting *Jumara,* 55 F.3d at 879–80) (cleaned up).

Daniels bears the burden "to establish that a balancing of proper interests weighs in favor of the transfer." *Jumara,* 55 F.3d at 879–80. "The burden is a heavy one: 'unless the balance of convenience of the parties is ***strongly*** in favor of defendant, the plaintiff's choice of forum should prevail.'" *Graphics Properties,* 964 F. Supp. 2d at 325, quoting *Shutte,* 431 F.2d at 25 (emphasis in the original).

An examination of each factor reveals that this case should remain in this Court.

### i.  Private Factors:

#### Plaintiff's Forum Preference

This factor weights against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request—one that should not be lightly disturbed. Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *United States v. United States Sugar Corp.*, 2022 WL 354228, at *3 (D. Del. Jan. 11, 2022) (quoting *Shutte*, 431 F.2d at 25, *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975)) (cleaned up).

Princeton-Delaware "is a Delaware-incorporated entity that has elected to bring suit in Delaware. That choice remains entitled to paramount consideration, and, therefore, this factor weighs against transfer." *Samsara Inc. v. Motive Technologies, Inc.*, 2024 WL 3822981, at*4 (D. Del. Aug. 14, 2024) (internal quotations omitted).

The choice of Delaware as a forum is sensible, not only because Princeton-Delaware is a Delaware corporation, but because the merger underlying the dispute over Daniels' purported ownership of Princeton-Delaware stock both requires an application of the Delaware General

Corporation Law, and interpretation of its corporate documents.[8] *See, e.g. United States v. Energy Solutions, Inc*., 2016 WL 7397069, at *2 (D. Del. Dec. 21, 2016). Moreover, it is, as explained *supra*, the forum where venue and personal jurisdiction are proper for all potential Defendants, even if the Florida case should be transferred to this Court.

### *Defendant's Forum Preference*

Daniels prefers having this case transferred to the Southern District of Florida.

### *Whether the Claims Arose Elsewhere*

This factor favors Delaware, as "the Court should look to where the corporate decisions underlying the claims were made." *United States v. United States Sugar Corp.*, 2022 WL 354228, at *4 (D. Del. Jan. 11, 2022) (quoting *F.T.C. v. Graco, Inc.*, 2012 WL 3584683, at *5 (D.D.C. Jan 26, 2012)) (cleaned up). Daniels' claims to ownership of stock in Princeton-Delaware arise from the merger of Princeton-Florida into Princeton-Delaware, which occurred in Delaware.

### *Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition*

This factor weighs in favor of remaining in Delaware. "Determining convenience of the parties requires the Court to consider: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)).

---

[8] Notably, Section 259(a) of the DGCL gives the surviving corporation the power to enforce any rights or defenses of the constituent Florida corporation.

All parties are physically located in the Northeastern part of the United States; Daniels himself is within about a 45 minute or so drive of this courthouse. All parties involved could drive to Delaware more quickly and easily than they could fly to Florida. As far as the ability to bear travel costs, Daniels is physically located the closest to this courthouse and could easily drive; the Princeton-Delaware officers are all located in New Jersey and Connecticut, and since 2017, Princeton CarbonWorks' principal place of business has been in Connecticut. Corporate books and records can be obtained from Delaware or the Connecticut principal place of business.

### Convenience of the Witnesses

This factor favors remaining in Delaware for the foregoing reasons. It carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. There are no third-party witnesses that this Court should be concerned about inconveniencing. *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F.Supp.2d 744, 757 (D. Del. 2012).

### Location of Books and Records

This factor favors remaining in Delaware, or is neutral, as documents are electronic.

### ii.    The Public Factors

### Enforceability of the Judgment

This factor is neutral; judgments of both courts are equally enforceable.

### Practical Considerations

This factor similarly weighs against transfer. In evaluating this factor, the Court considers "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Litigating in Florida imposes significantly more expense; witnesses would be required to travel to Florida multiple times for depositions, hearings, and trial.

***Relative Administrative Difficulty Due to Court Congestion***

This factor is neutral.

***Local Interest in Deciding Local Controversies at Home***

This factor may be the most important consideration; Delaware Courts have a strong interest in deciding questions of internal corporate governance of Delaware corporations. "Delaware has a paramount interest in the prompt resolution of a dispute that impacts the governance of a Delaware corporation." *Wolfe*, 5.01[e], at 5-31 (quoting *La. State Emps.' Ret. Sys. v. Citrix Sys.*, 2001 Del. Ch. LEXIS 2, at *11 (Jan. 5, 2001)). Whether Daniels owns shares of Princeton-Delaware will impact the governance of the Company and require interpretation of Princeton-Delaware's corporate governance documents.

***Public Policies of the Fora***

"[T]his factor weighs against transfer … because … public policy encourages Delaware corporations to resolve disputes in Delaware courts. *United States v. United States Sugar Corp.*, at * 9 (quoting *Graphics Props.*, 964 F.Supp.2d at 331). This Court has an interest in resolving disputes involving corporate governance of Delaware corporations. No such interest exists in the Florida forum.

***Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases***

This Court is more familiar than a Florida court in applying the Delaware General Corporation Law. This factor weighs against transfer of this matter.

***Balancing the Private and Public Factors***

Only one factor—Defendant's preference—weighs in favor of transfer. The other factors are overwhelmingly in favor of retaining jurisdiction in this Court, or are neutral. Giving each its

appropriate weight in light of the heavy burden borne by the Defendant in requesting transfer, it is clear that the *Jumara* factors require that this matter remain in this Court.

## V.    Conclusion

Because Daniels claims ownership in shares of a Delaware corporation, and the Delaware General Corporation Law establishes in Section 169 that the situs of those shares is in Delaware, jurisdiction is appropriate in this Court. This Court should deny Daniels' request to transfer this matter to Florida because Daniels has failed to meet the heavy burden of showing the *Jumara* factors weigh in favor of transfer. Accordingly, Daniels' Motion to Dismiss and Motion to Transfer should both be denied.

<div style="margin-left: 50%;">

LEWIS BRISBOIS BISGAARD & SMITH LLP

 */s/ Aimee M. Czachorowski*
Francis G.X. Pileggi (No. 2624)
Aimee M. Czachorowski (No. 4670)
500 Delaware Avenue, Suite 700
Wilmington, DE 19801
(302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Aimee.Czachorowski@LewisBrisbois.com

*Attorneys for Plaintiff*

</div>

Date:  April 4, 2025