# Exhibit B

```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION
                     CASE NO. 25-CV-20137-DPG
3

4    PAUL DANIELS,                        Miami, Florida

5         Plaintiff,                      March 14, 2025

6         vs.                             9:53 a.m. to 10:50 a.m.

7    MARTIN CROTTY, et al.,

8         Defendants.                     Pages 1 to 39
     _____
9

10                          MOTION HEARING
                BEFORE THE HONORABLE DARRIN P. GAYLES
11                  UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:
13
     FOR THE PLAINTIFF:      BRIAN S. DERVISHI, ESQ.
14                           LUKE JACOBS, ESQ.
                             WEISSMAN & DERVISHI, P.A.
15                           1 SE 3rd Avenue
                             Suite 1700
16                           Miami, Florida 33131

17
     FOR THE DEFENDANTS:     KENNETH J. JOYCE, ESQ.
18                           STACY M. SCHWARTZ, ESQ.
                             LEWIS BRISBOIS BISGAARD & SMITH, LLP
19                           100 SE 6th Street
                             Suite 2600
20                           Fort Lauderdale, Florida 33301

21
     STENOGRAPHICALLY REPORTED BY:
22
                             PATRICIA DIAZ, FCRR, RPR, FPR
23                           Official Court Reporter
                             United States District Court
24                           400 North Miami Avenue
                             11th Floor
25                           Miami, Florida 33128
                             (305) 523-5178
```

1          (Call to the Order of the Court.)

2          THE COURT:  Please be seated.

3          COURTROOM DEPUTY:  Calling case 25-CV-20137, Daniels

4    versus Crotty.

5          Counsel, please state your appearances, starting with

6    the plaintiffs.

7          MR. DERVISHI:  Good morning, Your Honor, Brian Dervishi

8    and Luke Jacobs for the plaintiff, Paul Daniels.

9          THE COURT:  All right.

10         MR. JOYCE:  Your Honor, Ken Joyce and Stacy Schwartz on

11   behalf of the defendants, Martin Crotty, Harrison Macris,

12   Bradley Werntz, and the company Princeton Carbon Works, Inc., a

13   Delaware corporation.

14         THE COURT:  All right.  Good morning.

15         So, we are here primarily for the defendant's motion to

16   stay, which is opposed by the plaintiff.

17         Would you like to be heard first?

18         MR. JOYCE:  Thank you, Your Honor.

19         THE COURT:  Before you begin your argument, can you

20   tell me, what's the status of the case in Delaware?

21         MR. JOYCE:  So, Your Honor, in the Delaware action an

22   amended pleading or complaint has been filed.  The response to

23   that amended complaint is due on the 21st of March, and then

24   there will be 14 days to respond and a seven-day reply.

25         So, we are expected to be fully briefed sometime around

1   the second, third week of April.

2           THE COURT:  And the amended complaint, is it just a dec

3   action or is it something else?

4           MR. JOYCE:  It is just a dec action, Your Honor.

5           THE COURT:  It covers the same issues?

6           MR. JOYCE:  Generally covers the same issues, got a

7   little more meat on it.

8           THE COURT:  All right.

9           MR. JOYCE:  Your Honor, we're here on a motion to stay.

10  We're seeking to stay the Rule 16, 26(a)(1) obligations and

11  merit discovery.

12          As you're aware, the Court has broad discretion on how

13  to manage its cases, including discovery and other pretrial

14  obligations.  The proponent of the stay bears the burden of

15  showing that there's good cause and reasonableness.

16          As we cited, there is many cases where, including the

17  Eleventh Circuit, have found that the courts have good cause to

18  stay discovery where resolution of the preliminary motion would

19  dispose of the entire action.  So, the Court here has the

20  opportunity to weigh the likely cost and burden of the

21  proceedings against the possibility that the motion that we

22  have filed will be granted and eliminate the need for discovery

23  altogether.

24          THE COURT:  So, I mean, I can understand that if this

25  were the only case, but if there is this Delaware action, same

1  substantive issues, same parties, why wouldn't permitting

2  discovery in this case be appropriate but have it coordinated

3  with the Delaware case?

4       MR. JOYCE:  Well, Your Honor --

5       THE COURT:  Because it's going to happen either way.

6  Discovery is going to happen on the same issues.

7       MR. JOYCE:  I agree, discovery will happen if the case

8  proceeds, and in this particular instance, we believe the

9  appropriate venue is Delaware to have that discovery.  And it

10  kind of dovetails and it's a good point of Your Honor's to

11  raise.  The -- when we're just talking about convenience alone,

12  you'll see that all of the individuals live in an area that if

13  you centered around Delaware, they're in Pennsylvania for the

14  plaintiff, Connecticut, New Jersey.  And all of the records of

15  the company are with the officers up there.

16       There is really no connection to Florida whatsoever.

17       There is no, none of the defendants, plaintiff live

18  here.

19       The corporation that survived the merger is a Delaware

20  corporation.  It's our position and the law of Florida is such

21  that the constituent company that merged into the surviving

22  company is no longer in existence.  Importantly, Your Honor,

23  the surviving entity, what we refer to as PCW Delaware,

24  pursuant to the law is required to assume all the rights and

25  obligations of the constituent company that has been merged out

1  of existence.

2          So, there is a reason why we chose the Delaware forum.

3  It is really the only appropriate forum to hold here because

4  they're attacking and making issues regarding their interest

5  and particularly the value associated with their interest in --

6  with the surviving entity.

7          They're not asking to undo or unwind.  There is no

8  injunction claim here in the action before you.  They're trying

9  to get the value out of this company.  We are not denying that

10  they can get the value out of this company.  They had appraisal

11  rights.  They chose, elected to not proceed with their

12  appraisal rights and took, you know, six months, filed this

13  action.

14          So, what we're trying to determine at that point in

15  time was where is the appropriate venue to have this dispute,

16  with the Delaware entity, Delaware law, and it will be fully

17  briefed by April, but preliminarily, Delaware law is such that

18  it has in rem jurisdiction over the stock.  It has jurisdiction

19  over the entity where the stock is at issue and claims are made

20  against the stock.

21          So, for us to conduct discovery down here -- and, by

22  the way, we're not asking for the motion to dismiss for

23  personal jurisdiction or venue be delayed in any way.  We just

24  would like to give Your Honor a chance to rule on those issues

25  and it may eliminate the need for any discovery in Florida at

1    all.

2          THE COURT:  So, in your motion, in a footnote, you

3    indicate that jurisdictional discovery may be appropriate.

4          What do you think that looks like here?

5          MR. JOYCE:  I think what they would have to do, Your

6    Honor -- I mean, the plaintiff obviously --

7          THE COURT:  They have to ask for it.

8          MR. JOYCE:  They have to ask for it, right.  They

9    haven't as of yet, and interestingly, they have not filed any

10   affidavit in support of any of the positions they filed to

11   date.  You know, in our brief we point out, they make a lot of

12   argument about contested facts in their response but there is

13   no citation.  There is no affidavit filed.  There is no record

14   activity they're referring to.  It's argument of counsel.

15         Essentially, what they're saying, Judge, is, well, this

16   was a Florida company so you should just have this dispute in

17   Florida, and that's just, frankly, not enough.  This company

18   had virtually nothing to do with Florida other than it was

19   incorporated here because one of the founder's father-in-law

20   was a lawyer that lived in the Boca area.

21         That's really the connection to Florida.

22         So, we believe that, you know, if the Court weighs the

23   possibility, and as the Court, as the Eleventh Circuit says,

24   can take a peek at the motions to dismiss, you'll find that

25   they're, I believe, well-founded, and that there is no reason

1   to be engaging in parallel proceedings at this stage.  It's

2   only going to increase the cost and burdens on all the parties.

3              THE COURT:  It's not really in this motion but have you

4   filed anything with regard to the First Filed Rule and whether

5   or not that's appropriate here?

6              MR. JOYCE:  They have briefed that.  In our reply we

7   were going to touch on it, Your Honor.  But, you know, they're

8   trying to suggest that the First Filed Rule, there is an

9   exception to the First Filed Rule because we were aware that

10  there was a dispute and that we ran to the courthouse first to

11  forum shop.

12             THE COURT:  Is that not what happened?

13             MR. JOYCE:  Well, no.  I would say that it -- we didn't

14  run to Delaware to forum shop.  We filed in Delaware because

15  that was the only place that we believed that had the right to

16  undertake to adjudicate these issues surrounding the value of

17  the stock and the merger.

18             THE COURT:  Okay.

19             MR. JOYCE:  So, Your Honor, we ask that you entertain,

20  at least on a temporary basis, a stay of the Rule 16, Rule 26

21  obligations and merit discovery, and if the plaintiff wants to

22  engage in jurisdictional discovery, of course, we will address

23  that.

24             THE COURT:  So, because the pleadings -- the answer has

25  not been filed yet to the amended complaint?

1          MR. JOYCE:  No.

2          THE COURT:  That's the amended complaint.  Do you have

3     a schedule on that case yet, in the Delaware case?

4          MR. JOYCE:  No, they are going to, my understanding,

5     enter into a stipulation today that the response will be filed

6     on the 21st of March, and then there will be a 14-day period to

7     oppose, and then a reply of seven days.

8          THE COURT:  Okay.  So, there was no response to the

9     original complaint?

10          MR. JOYCE:  No.

11          THE COURT:  All right.  Anything else before I turn to

12     the plaintiffs?

13          MR. JOYCE:  No, Your Honor.  Thank you very much.

14          THE COURT:  All right.  Thanks.

15          MR. DERVISHI:  May it please the Court, Your Honor,

16     Brian Dervishi.

17          Your Honor, I first have to address the Delaware action

18     and the characterization of it.  It's not the same parties.

19     The only party to the Delaware action is the corporation, and

20     it's very focused just on the June 24th, 2024, merger that

21     occurred in Florida.

22          THE COURT:  I'm sorry, I didn't look for it, but do you

23     have a copy of the amended complaint, or has it been filed on

24     the docket --

25          MR. DERVISHI:  I don't think it has been filed.

1          THE COURT:  -- as an exhibit?

2          MR. DERVISHI:  What we filed in our opposition papers

3   to the motion to dismiss is our motion to transfer.  So, what's

4   happening in Delaware is, I was sandbagged.  The lawyer

5   contacts me and says, we should talk about settlement, so I

6   sent them the draft complaint and say we're happy to talk about

7   settlement.  We've been talking about settlement for quite a

8   while trying to get this thing resolved, but if not, you know,

9   it has to be premised on disclosure, and Mr. Daniels has been

10  in the dark since he left the company in 2019.

11         He is the one that built this company up and did

12  everything to get this company going and put two years of his

13  life.  In exchange he got 18.5 percent of the company, and then

14  when he left, and I think it was in anticipation of the type of

15  conduct that we have since experienced, he has since

16  experienced, they have kept him completely in the dark.

17         They haven't given him any documents on the

18  corporation, anything in compliance with Florida law and annual

19  meetings on actions without -- actions by a majority of the

20  corporate shareholders without a meeting.  He didn't get any

21  documents for several years, and he was contacting them and

22  trying to say, what's the status of my stock, and what's my

23  interest and I would like to sell it, completely stiffed on

24  that.

25         The first piece of paper he gets is in June 2024, which

1    is, you don't exist anymore and you're wiped out, and now all

2    the assets of this Florida company that has been in here since

3    2015 is now up in Delaware.

4         And when we sent -- in response to that we sent a

5    simple statutory request under the corporate statute 607

6    saying, can you please give us -- and we identified a list of

7    documents that any shareholder is entitled to and the answer

8    was, well, you are no longer a shareholder so you don't get

9    those documents.  So, in terms of harm and a stay of discovery,

10   at least it's consistent with them denying us everything, but

11   it does cause harm and I'll address that.

12        But I want to come back to the Delaware action.  So, I

13   respond -- and this is all in my declaration that's in the

14   file.  I say, here's the complaint.  We're ready to talk

15   settlement, but it's got to be on disclosure.  You know, you

16   can't expect us to sell our interest without at least getting

17   some of the corporate records.  Who are the stockholders?

18        I had 18.5 percent.  Now you're saying I have 6.85

19   percent.  What happened?

20        How did 18.5 of the startup when it was worth nothing

21   and I put two years of extraordinary efforts to create this

22   tubeless carbon bike wheel.  You can go online.  They sell

23   between $3,500 to $6,000, and they're very successful.  And

24   that was the basis of our allegation in terms of subject matter

25   jurisdiction.

 1          They tendered us $173,000 for our interest without
 2    knowing anything, without disclosing anything, and we sent it
 3    back to them.
 4          THE COURT:  Let me ask you, a moment ago defense
 5    counsel said that Mr. Daniels is not seeking to unwind the
 6    merger.  He is simply trying to make sure he's getting the
 7    value of his shares.
 8          Is that an accurate way of describing what you're
 9    seeking?
10          MR. JOYCE:  No, Your Honor.
11          MR. DERVISHI:  No, Your Honor.  Under Florida law, a
12    minority shareholder gets notice that there is a merger that
13    takes place, you can get a value of it and you can proceed
14    under the statute.  That's your exclusive remedy, but Florida
15    law also provides that if the merger and if the corporate
16    action was procured as a result of fraud, material
17    misrepresentation or omission of a material fact necessary to
18    make statements made in light of the circumstances in which
19    they were made, not misleading, you can pursue other remedies.
20          Only in that instance can you back out and withdraw
21    from the merger procedure, which is what Mr. Daniels did.
22    Because this was all -- it was all done in the dark.  He was,
23    you know, sell us your shares in this startup that's now doing
24    between $14 to $15 million in annual sales and $6,500, $6,000
25    wheels that are -- you know, for a very discerning and a fluent

1    market are a very hot topic that Mr. Daniels created.

2        THE COURT:  All right.  I just want to be clear.  Among

3    the remedies that you're -- well, the remedies that you are

4    seeking here are what?

5        MR. DERVISHI:  We have actions for declaratory relief,

6    breach of contract, breach of fiduciary duty.  He would

7    constantly contact them.  What's the value?  What's the extent

8    of my shares?

9        They would say -- well, one person would say, you have

10   18.5.  Then, Mr. Crotty -- and then Mr. Macris would say, well,

11   I don't know if you have any shares anymore.  We have talked

12   with our corporate counsel and you may not have anything, and

13   you're not entitled to sell it.  And they -- they never

14   disclosed -- you know, the corporation has a fiduciary duty to

15   its shareholders and to the company itself.  They never

16   disclosed his interest.  They never gave him any documentation.

17   This is the event that happened on such and such a date, that's

18   how your stock became from 18.5 to 6.85, nothing.

19       So, we have breach of fiduciary duty, conspiracy to

20   commit breach of fiduciary duty, conversion.  You know, nice

21   common law word for theft because that's what they were doing.

22   They were basically stealing his sweat equity, 18.5 percent.

23       THE COURT:  I'm sorry to interrupt, Counsel.

24       I understand what the claims are and what the

25   allegations are.  The reason I'm asking this question about

1    what you're seeking as a remedy, if it's --

2        MR. DERVISHI:  Damages, Your Honor.

3        THE COURT:  It's damages.

4        MR. DERVISHI:  I just want a damage award.

5        THE COURT:  So, if it's damages and you're seeking

6    damages, and you're not seeking to have the merger unwound, the

7    Florida company and the Delaware company.

8        If you're just seeking damages from the Delaware

9    company, why is this in the Southern District of Florida the

10   appropriate place to litigate this as opposed to Delaware, if

11   the parties are all in Delaware, if the primary defendant who

12   arguably would pay damages is in Delaware, why would this case

13   be appropriate for the Southern District of Florida?

14       MR. DERVISHI:  Well, first, not all the parties are in

15   Delaware.  The only party that is in Delaware is the corporate

16   entity.  So, Mr. Macris and Mr. Crotty and Mr. Werntz, they

17   live in Connecticut, Rhode Island, and New Jersey.

18       None of them are subject to jurisdiction in Delaware as

19   far as I can tell.  So, right now the only entity and case

20   that's pending is a Delaware action brought in response to our

21   saying we're going to file this lawsuit if we don't have at

22   least a commitment to disclosure.

23       That's the only action that's pending in Delaware.

24   It's not the same action.

25       THE COURT:  Sorry, Daniels, he resides where?

1          MR. DERVISHI:  In Pennsylvania.

2          THE COURT:  So, there is no personal -- you are not

3    asserting any kind of personal jurisdiction or venue issue in

4    Delaware, are you?

5          MR. DERVISHI:  Yes.

6          THE COURT:  You are.

7          MR. DERVISHI:  Well, what we are asking for is besides

8    him not being subject to jurisdiction in Delaware and their

9    answer is, well, interest in a corporation is personal

10   property, it's in rem, but what we are asking is that all of

11   the parties are here in the Southern District.  And they're

12   here in the Southern District because this is where the fraud

13   occurred.  This is where the -- not the fraud, Your Honor.  We

14   don't have an action for fraud, but this is where the tortious

15   conduct -- this is where the breach of fiduciary duty occurred.

16   The corporation that owns all the assets is in Florida.

17         There is a basis for long-arm jurisdiction over all of

18   these defendants in Florida.  It was concerted effort.  It was

19   coordinated.

20         Mr. Crotty has been filing annual reports with the

21   Secretary of State since 2015.  Mr. Macris and Mr. Werntz

22   signed papers that they filed with the Florida Secretary of

23   State saying we're merging now, we're out of here.

24         It goes -- the thing is the defendants are saying,

25   well, let's -- this lawsuit is just about this merger, but it's

1    really about much more than that.  It's about their conduct,

2    their misleading him, their not honoring his 18.5 percent

3    equity position after he left the company, and it starts really

4    in 2019.

5          So, the whole story and the basis for jurisdiction is

6    here.  There is a basis for long-arm jurisdiction.  And the

7    case that we think is really helpful is the Siegmund case that

8    Judge Moreno wrote, and it may not be Judge Hanzman's red cow,

9    but it's pretty darn close.

10          It's a case that we cite.  It involves a freeze-out

11    merger, a merger done to eliminate the minority shareholder

12    unfairly with giving him an unfair value.  It's a 2018

13    decision, and it's all premised on long-arm jurisdiction.

14          They do have minimum contacts in Florida.  They have

15    been conducting and operating this business in Florida since

16    2015.  They were in this court for something like three years

17    in another related action defending an infringement action in

18    Florida.  Judge Moreno, you know, by happenstance had that case

19    as well.  He denied their motion to change venue.

20          So, this entire case is here in the Southern District.

21    The property is here, so that's the basis for venue.  The

22    events regarding the representations about his interest in the

23    company all took place in Florida regarding this Florida

24    entity.

25          It's really about his interest and what he did with the

 1    Florida entity and the value of it.  That's why we believe that

 2    jurisdiction is appropriate here, and a venue is appropriate

 3    here.  And that's why we have a pending motion.

 4         When they filed the amended complaint, Delaware counsel

 5    withdrew the venue motion just so that they would re-file it

 6    again, and that's the stipulation that's going to provide that

 7    just so the judge in Delaware has all the papers and one set of

 8    papers to deal with.

 9         THE COURT:  I'm sorry, I am going to interrupt you

10    again for just a moment.

11         I don't want -- I don't want us to get lost on the fact

12    that we're here really for the motion to stay as opposed to the

13    actual substantive motions, although I've asked some questions

14    about venue and jurisdiction.  So, I know you don't want the

15    stay, but the question I asked opposing counsel, what would --

16    what about parallel discovery on the two cases?

17         I understand they may not line up exactly.  All the

18    parties are the same.

19         Also, I would like to see that amended complaint.  If

20    you don't have the copy of it today, one of you --

21         MR. DERVISHI:  We do have a copy, Your Honor.

22         THE COURT:  Okay.

23         MR. DERVISHI:  I think we do have the amended

24    complaint, as well.

25         THE COURT:  So, would -- if I allow discovery to go

 1    forward, this would be appropriately coordinated discovery;

 2    would it not?

 3         MR. DERVISHI:  Absolutely.  It's the same law firm in

 4    Delaware.  We are working with counsel in Delaware as well.

 5    That would be certainly appropriate.

 6         Another alternative, Your Honor, if you are considering

 7    a stay, is to at least give us -- and this is the harm issue --

 8    at least give us the corporate records that we ask for that

 9    under the Florida Statute we are entitled to.  Mr. Daniels is

10    an individual.  I mean, he is a successful individual, an

11    accomplished individual.  But now we are dealing with the

12    lawsuit in Delaware, dealing with the litigation here.  We are

13    dealing with the stay motions, the motions to dismiss.

14         It would be helpful for him to at least have early on

15    the information that he has not been given -- despite his

16    request, despite request of his counsel -- to at least find out

17    who the corporate shareholders are.

18         It's in the Florida Statute, 607 -- it momentarily

19    alludes me, Your Honor, if you bear with me -- 607.1602.

20         He hasn't received anything from this corporation since

21    he left, not a single piece of paper.  I have one analogy, Your

22    Honor.  If you go online and you look at your retirement

23    account at Wells Fargo or Bank of America and one day it says

24    100,000, and the next day is it says 20,000, and then the next

25    day it says 40,000 and then it says zero, that's the sort of

1    absolute breach of fiduciary duty to the shareholders that

2    occurred here.

3         The only other comment I want to make, and the Siegmund

4    case -- I think of Richard Wagner.  The Siegmund case clearly

5    lays out how the Court goes through the jurisdictional

6    analysis, and if they file -- they file declarations.  We

7    generally track the statute in alleging long-arm jurisdiction,

8    you know, breach of contract, committing a tort here, operating

9    an office, an agency here, and then we allege conspiracy

10   allegations as well.

11        They then file declarations, and those declarations do

12   not respond at all to all the allegations of the misconduct

13   that are laid out in quite detail in the complaint.  All they

14   say is, you know, we reside in Connecticut and Rhode Island and

15   we are not in Florida.

16        THE COURT:  So, are you seeking jurisdictional

17   discovery in this case?

18        MR. DERVISHI:  No, I think we don't because we admit --

19   we allege they're not in -- Your Honor, I would take it with

20   the jurisdictional discovery.

21        THE COURT:  I know you're saying the jurisdiction is

22   proper.  They're saying there is no personal jurisdiction here.

23        MR. DERVISHI:  I would take it, Your Honor.  I would

24   take jurisdictional discovery for a short period of time.  I

25   think it's --

 1          THE COURT:  Well, I just want to be clear.  I'm not

 2   offering it.  I'm asking you if you're going to be requesting

 3   it, and if so, what would that be.

 4          MR. DERVISHI:  The jurisdictional discovery would be to

 5   take discovery on the long-arm allegations, the basis for the

 6   assertion of long-arm jurisdiction here.  That would be the

 7   basis for our jurisdictional discovery.

 8          They haven't denied it of their conduct here in

 9   Florida, but all of their conduct here in Florida has been

10   substantial.  They have purposely availed themselves,

11   independent of the merger and what they did to Mr. Daniels, but

12   they have availed themselves of this jurisdiction to conduct

13   this business, to do -- one of their milestone events took

14   place in Florida, in terms of the testing of the product.

15          I would take discovery to establish that they are here

16   purposefully, and I would like to take discovery on the basis

17   for the assertion of long-arm jurisdiction, whether it's breach

18   of contract, committing a tort, or having an office or agency

19   here, all which are basis for jurisdiction.

20          And injury to the Florida corporation, and this is all

21   discussed in the Siegmund case, is also a basis for

22   jurisdiction.

23          THE COURT:  So --

24          MR. DERVISHI:  It starts getting into merits.

25          THE COURT:  Well, I mean, that's the other thing that

1    I'm wondering, if all of this is intertwined, if any

2    jurisdictional discovery would be necessarily intertwined with

3    the merits discovery.  It's a small company, a small number of

4    directors.  I mean --

5            MR. DERVISHI:  Maybe with the --

6            THE COURT:  I don't know.  I mean, is there much

7    more -- I mean, what do you think discovery is largely in this

8    case?  I know you want to see the corporate documents, but as

9    far as the actual witnesses, is it basically the parties in

10   this case?

11           MR. DERVISHI:  It is, and it's basically the corporate

12   records eventually, because there has to be some explanation of

13   how Mr. Daniels ended up from 18.5 to 6.85 other than greed or

14   theft, maybe.  Maybe there is some corporate documentation.

15   Maybe it's very clear his interest was properly diluted.  We

16   have not seen the documents.

17           I mean, I think if I were a company that had those type

18   of documentations, saying it was all done properly.  We had

19   counsel, and we documented and gave you notice.  Here it is,

20   you only have 8.5 percent.  We have never seen that.

21           I think that's a big part of the discovery, and then it

22   would be valuation of the company.  For our allegation of

23   jurisdictional amount, we put a value of $35 to $40 million

24   based on the three times earnings of this company as it's now

25   doing business.

1          These wheels are a hot item among a very affluent and

2     discerning audience, and they are making a lot of money.  We

3     have not seen any documentation on that.

4          THE COURT:  All right.  Anything else, Counsel?

5          MR. DERVISHI:  My expectation is that Delaware -- I

6     mean, I know you are not looking for more work, Your Honor, but

7     my expectation is that Delaware will send this case down here

8     and Delaware action will be pending in front of Your Honor, in

9     which case it would be consolidated or we'd ask to have it

10    consolidated.

11         THE COURT:  Have you filed a motion in the Delaware

12    court to transfer?

13         MR. DERVISHI:  Our motion to transfer is attached to

14    the opposition to the motion to dismiss that we filed in this

15    case and that motion is pending.  We now have to re-file it

16    because they did an amended complaint, but it's going to be

17    pretty much the same document.  It will be filed on the 21st,

18    and when we do, we will file it in front of Your Honor as well.

19    That's our expectation, Your Honor.

20         Mr. Daniels is not in Delaware.  This case was here.

21    All the parties are here.  They have availed themselves of this

22    jurisdiction here.  The company is here, the dispute is here,

23    and this first filing was done as a preemptive filing or

24    anticipatory filing, to use Chief Judge Altonaga's description

25    from the case that we cited from her court.  So, it really

1    doesn't have to be given any sort of credit for being filed a

2    few hours before we filed.

3          THE COURT:  All right.

4          MR. DERVISHI:  Thank you, Your Honor.

5          THE COURT:  I'm sorry, I know it was just mentioned

6    in -- I know -- as I understand it, you or another attorney for

7    the, for Mr. Daniels communicated a deadline or the complaint

8    would be filed here.

9          How much time was the Delaware action filed before --

10         MR. DERVISHI:  A few hours, Your Honor.

11         THE COURT:  The same day?

12         MR. DERVISHI:  Our deadline -- I gave them until

13   January 10th.  I said, you know, we just need a commitment that

14   you're going to disclose and you're going to share information

15   and I think they filed -- and I got an e-mail saying, hey, we

16   just filed in Delaware.

17         This is in the affidavit or the declaration that I

18   filed in this case and the correspondence with the corporate

19   lawyer, Mr. Plattner.  So, they filed a few hours.  So we just

20   went ahead and filed, unfortunately.

21         I sent them the complaint, the draft complaint, here it

22   is, this is what we are going to file.  These are our claims.

23   Here is all our history, but we're happy to talk.  You reached

24   out to me about getting into settlement negotiations.

25         You said -- and his e-mail and my response are attached

1    to the declaration.  You said litigation is the worst way to

2    resolve a business dispute.  I agree, let's talk, but it's got

3    to be serious and you got to commit to disclose.  And then

4    silence, and then, hey, we filed a lawsuit in Delaware.

5           So, that falls exactly within the case by Chief Judge

6    Altonaga that we cited to, and that's -- that's -- it's a sharp

7    practice, and that's happened.  And that's why the law is very

8    clear in the Eleventh Circuit and also in the Third Circuit

9    that that first filing is not entitled to any sort of deference

10   in terms of the First Filed Rule.

11          THE COURT:  Okay.

12          All right.  Anything else?

13          MR. DERVISHI:  No, Your Honor.

14          THE COURT:  All right.  Thank you.

15          All right.  Anything else in reply, Counsel?

16          MR. JOYCE:  Excuse me, a couple of quick points, Your

17   Honor.

18          Notwithstanding the timing of the filing in the

19   First-Filed Rule, it doesn't change the fact that Delaware is

20   the appropriate venue and the appropriate place for this

21   dispute to be heard.

22          Your Honor was insightful to ask, ultimately what is

23   the relief that you're asking for and ultimately they said,

24   it's damages.  We all know why we are here.  We are here

25   because Mr. Daniels wants to achieve the best value he can out

1    of the merger.

2          If, in fact, there was no merger, there would be no

3    valuation.  There would be no reason to have a dispute.  He

4    would be a minority shareholder, which he always knew he was

5    within the time he signed up to assist this corporation.  He

6    was going -- he was a minority shareholder.  He didn't have any

7    preemptive rights.  He didn't have any anti-dilution rights.

8          He knew as a matter of public record that this company

9    had 10,000 authorized shares, so he could be diluted.  In fact,

10   the founder of this company, his interest was diluted over the

11   same period of time.

12         I don't want to get too far into the merits, but the

13   appropriate place to have that dispute is Delaware.  And when

14   they say they didn't get any records, Your Honor, what they

15   didn't advise the Court was that they got everything that the

16   Florida statute and the Delaware statute, for that matter,

17   requires to be provided to them for their appraisal rights.

18         And not only did they receive that information, but we

19   also agreed to give them our valuation that was done by Marcum,

20   one of the largest accounting firms in the world.  We provided

21   them access to that information.  So, it's not like he's been

22   frozen out of information.

23         He got the very valuation that our client was going to

24   rely upon for the appraisal process and the financials that

25   Marcum relied upon in their report.

1          So, you know, that Siegmund case that counsel

2    mentioned, there is a fine distinction in that case.  The claim

3    that was lodged was a derivative claim alleging that the entity

4    that they were seeking to have jurisdiction over was, had

5    committed a breach of fiduciary duty.  So, the -- it was not a

6    claim like we have here where Mr. Daniel is saying, well, you

7    owe me a fiduciary duty.  You owe me personally a fiduciary

8    duty.

9          In that instance they were saying the corporation is

10   owed a fiduciary duty, and that corporation was in the

11   jurisdiction.  So, I think that, considering all, you know, all

12   of the facts and the issues that are surrounding here, we know

13   we have -- we're either going to be likely in Florida or likely

14   in Delaware, one of those two places.

15         There is no reason to have parallel proceedings, and we

16   are just asking the Court to give it a little time for the

17   Delaware court and Your Honor to look into the substance of the

18   issues raised in the -- to take a peek at the motions for lack

19   of jurisdiction and venue and the motion to drop the

20   constituent corporation.

21         THE COURT:  So, I mean, this is all very interesting.

22   So, in this case you have already filed the motion to dismiss

23   challenging personal jurisdiction and venue.  In Delaware, I

24   don't know if it's been filed or if it's going to be filed, a

25   challenge by Mr. Daniels to appropriate venue.  So, we got two

1    different courts deciding at the same time where a case is

2    supposed to be.  That's another factor in all of this in

3    deciding whether or not a stay is appropriate.

4          MR. JOYCE:  Well, I just raise, you know, one

5    possibility is Your Honor finds that there is no jurisdiction

6    and no venue in Florida.  There is also, by the way, 12(b)(6)

7    motions that are lodged as well.

8          So, the Court could make that determination, there is

9    no jurisdiction or no venue.  They could still file a motion to

10   transfer to Florida.  I don't think it will be successful under

11   those circumstances but, you're right, they have filed it or

12   are going to file a motion to transfer to the Southern District

13   of Florida in that Delaware case.

14         So, I don't know if there is any precedents for this

15   circumstance but we feel like we've got to give the courts a

16   chance to weigh in.

17         THE COURT:  Yeah.  So, well, one, the 12(b)(6) issues,

18   I have to resolve the jurisdictional issue first before I can

19   even dive into that.  You know, the situation is a little

20   unique because there are -- there are lots of cases that talk

21   about -- a lot of cases that you cited, cases dealing with

22   whether a stay is appropriate and where the pending motions

23   might resolve the entire action.  That's not the case here.

24         The case is going to go forward somewhere, whether it's

25   here or Delaware or conceivably somewhere else, because it

1  seems like venue where everyone is, it might be appropriate

2  also somewhere else.  But, you know, given the fact that no

3  matter what is decided, litigation is going to continue, either

4  here or Delaware, discovery is going to continue somewhere,

5  whether it's here or Delaware, I don't find that a stay is

6  appropriate given the circumstances here.

7       So, I'm going to deny the motion.

8       With regard to this particular issue that I need to

9  decide first, whether or not there is personal jurisdiction, I

10  wouldn't have a problem with the parties prioritizing discovery

11  to deal with that issue before a ruling is made, so that's

12  something the parties can discuss.  And I do believe that any

13  discovery should be coordinated with both cases.

14       So, whatever proposed schedule that -- when you confer,

15  it should be for both cases, not just for one so there is no

16  unnecessary duplication of discovery.

17       You know, typically, until jurisdiction is resolved, I

18  wouldn't really rule on much else or order much else, but it

19  seems to me in this case an early mediation or settlement

20  conference might be appropriate.  I mean, I understand you've

21  got these competing viewpoints of where the cases should

22  proceed, but the case doesn't sound especially complicated.

23       So, if the parties are amenable to an early settlement

24  conference with a magistrate judge or if you want to mediate it

25  on your own, perhaps that might be an appropriate way to

1    proceed.

2         What are your thoughts, starting with you, since you

3    are at the podium.  What do you think about that?

4         MR. JOYCE:  From the defense perspective, Your Honor,

5    we have no problem entering into an early mediation whether

6    with a private mediator or magistrate.

7         You know, as Mr. -- as opposing counsel has indicated,

8    we have had some discussions, obviously, that didn't go far

9    enough to reach a resolution, but we are all for having an

10   early mediation and see, of course, we could work something

11   out.

12        THE COURT:  Do you have a preference between the two,

13   mediation versus settlement conference?

14        I will note, in this case, Judge Goodman is the

15   assigned -- Chief Magistrate Judge Goodman is the assigned

16   magistrate judge.  He is very experienced, if that factors into

17   the calculation at all.

18        MR. JOYCE:  I don't have a specific preference, Your

19   Honor.  I would just, you know, thinking about the issues in

20   the case, I mean, there are some complicated corporate issues.

21   If there was a mediator out there that we could agree upon that

22   had specific experience dealing with mergers and acquisitions,

23   that might be helpful to us.

24        THE COURT:  Okay.  What's your opinion about an early

25   mediation or settlement conference?

1          MR. DERVISHI:  We would welcome a settlement conference

2    with Chief Magistrate Judge Goodman.  We know he has a

3    commercial litigation background.  I think he would be ideal

4    for this, and we would embrace that completely, Your Honor.

5          THE COURT:  Okay.  He retires in July, so I'm sure he

6    has a lot on his plate, but I will refer this to Judge Goodman

7    for a settlement conference to occur within the next 60 days at

8    a mutually convenient time.

9          Within 14 days the parties should submit a proposed

10   scheduling order for both cases.

11         I mean, understanding -- I mean, I can't control

12   what -- who is the judge in Delaware?

13         MR. JOYCE:  That's a good question.  I have it on the

14   tip of my tongue, Your Honor.

15         MR. DERVISHI:  I actually don't know.

16         THE COURT:  It says R.G.A., but I can't think of who

17   that is.

18         Well, whoever the judge is, I can't control what that

19   judge decides to do.  The judge may decide to take --

20         MR. DERVISHI:  Judge Richard Andrews, apparently, is

21   the judge in Delaware.

22         THE COURT:  That judge may decide to do something else.

23   The judge may decide to stay discovery in that case.  I don't

24   know, but I don't -- whatever my decision is doesn't affect --

25   well, I believe they should be merged, but that judge can do

1    whatever that judge chooses to do, of course.

2        So, if you will, confer and submit a proposed schedule

3    within 14 days, and in the meantime we will look to your

4    motion.

5        MR. JOYCE:  The jurisdictional motion will be fully

6    briefed by this Tuesday.

7        THE COURT:  So, before I start taking more than a peek,

8    but a look at the substance, is there any discovery that you --

9    like for the plaintiff here, is there any discovery that you

10   need before I start reviewing that substantively?

11       MR. DERVISHI:  Yes, Your Honor.  I would make it very

12   limited.  I would try to avoid getting into the weeds on the

13   merits, but I would like to inquire further on their contacts

14   with this jurisdiction.  I think it's substantial and I don't

15   think their declarations are completely candid on that.

16       THE COURT:  So, how much time would you need to do

17   that?

18       MR. DERVISHI:  45 days, 30 days, Your Honor.

19       THE COURT:  Okay.  So, I will give the -- Mr. Daniels

20   45 days to conduct any jurisdictional discovery given that

21   timeline, just thinking about everything in total.

22       So, 45 days to conduct jurisdictional discovery and

23   then I will take a look at the -- work on issuing a ruling on

24   the order.

25       If I need a hearing, then I will contact you and we

1    will have a hearing on the motion.

2              Yes, sir.

3              MR. JOYCE:  Could I raise just one point, Your Honor?

4              THE COURT:  Yes, sir.

5              MR. JOYCE:  There is a concern acknowledged in some of

6    the cases we described that participation in merits-based

7    discovery can lead to a waiver of jurisdiction.  I just want to

8    be clear, to the extent we get in touch on any merits-based

9    discovery, that the defendants are not voluntarily waiving

10   their jurisdiction.

11             THE COURT:  All right.  And you agree that

12   participating in discovery will not constitute a waiver?

13             MR. DERVISHI:  Absolutely, Your Honor.

14             THE COURT:  Okay.

15             MR. DERVISHI:  I have a copy of our motion to dismiss

16   and transfer in Delaware, if Your Honor would like it, or we

17   can file it in the CM/ECF.  We will be filing it.

18             THE COURT:  Just file it.  That's fine.

19             MR. DERVISHI:  Thank you.

20             MR. JOYCE:  Thank you, Your Honor.

21             THE COURT:  All right.

22             We will be in recess for now then.  Thank you.

23             And these deadlines I will issue a paperless order

24   today with those dates.

25             (Proceedings were concluded at 10:50 a.m.)

1

2                               C E R T I F I C A T E

3

4

5            I hereby certify that the foregoing is an

   accurate transcription of the proceedings in the
6
   above-entitled matter.
7

8

9

10
   March 24, 2025        /s/Patricia Diaz
11 DATE                   PATRICIA DIAZ, FCRR, RPR, FPR
                          Official Court Reporter
12                        United States District Court
                          400 North Miami Avenue, 11th Floor
13                        Miami, Florida 33128
                          (305) 523-5178
14

15

16

17

18

19

20

21

22

23

24

25

## $

**$14** [1] - 11:24
**$15** [1] - 11:24
**$173,000** [1] - 11:1
**$3,500** [1] - 10:23
**$35** [1] - 20:23
**$40** [1] - 20:23
**$6,000** [2] - 10:23, 11:24
**$6,500** [1] - 11:24

## /

**/s/Patricia** [1] - 32:10

## 1

**1** [2] - 1:8, 1:15
**10,000** [1] - 24:9
**100** [1] - 1:19
**100,000** [1] - 17:24
**10:50** [2] - 1:6, 31:25
**10th** [1] - 22:13
**11th** [1] - 1:24, 32:12
**12(b)(6** [2] - 26:6, 26:17
**14** [4] - 1:5, 2:24, 29:9, 30:3
**14-day** [1] - 8:6
**16** [2] - 3:10, 7:20
**1700** [1] - 1:15
**18.5** [8] - 9:13, 10:18, 10:20, 12:10, 12:18, 12:22, 15:2, 20:13

## 2

**20,000** [1] - 17:24
**2015** [3] - 10:3, 14:21, 15:16
**2018** [1] - 15:12
**2019** [2] - 9:10, 15:4
**2024** [2] - 8:20, 9:25
**2025** [2] - 1:5, 32:10
**21st** [2] - 2:23, 8:6, 21:17
**24** [1] - 32:10
**24th** [1] - 8:20
**25-CV-20137** [1] - 2:3
**25-CV-20137-DPG** [1] - 1:2
**26** [1] - 7:20
**26(a)(1** [1] - 3:10
**2600** [1] - 1:19

## 3

**30** [1] - 30:18

**305** [2] - 1:25, 32:13
**33128** [2] - 1:25, 32:13
**33131** [1] - 1:16
**33301** [1] - 1:20
**3rd** [1] - 1:15

## 4

**40,000** [1] - 17:25
**400** [2] - 1:24, 32:12
**45** [3] - 30:18, 30:20, 30:22

## 5

**523-5178** [2] - 1:25, 32:13

## 6

**6.85** [3] - 10:18, 12:18, 20:13
**60** [1] - 29:7
**607** [2] - 10:5, 17:18
**607.1602** [1] - 17:19
**6th** [1] - 1:19

## 8

**8.5** [1] - 20:20

## 9

**9:53** [1] - 1:6

## A

**a.m** [1] - 1:6, 31:25
**above-entitled** [1] - 32:6
**absolute** [1] - 18:1
**absolutely** [2] - 17:3, 31:13
**access** [1] - 24:21
**accomplished** [1] - 17:11
**account** [1] - 17:23
**accounting** [1] - 24:20
**accurate** [2] - 11:8, 32:5
**achieve** [1] - 23:25
**acknowledged** [1] - 31:5
**acquisitions** [1] - 28:22
**action** [20] - 2:21, 3:3, 3:4, 3:19, 3:25, 5:8, 5:13, 8:17, 8:19,

10:12, 11:16, 13:20, 13:23, 13:24, 14:14, 15:17, 21:8, 22:9, 26:23
**actions** [3] - 9:19, 12:5
**activity** [1] - 6:14
**actual** [2] - 16:13, 20:9
**address** [3] - 7:22, 8:17, 10:11
**adjudicate** [1] - 7:16
**admit** [1] - 18:18
**advise** [1] - 24:15
**affect** [1] - 29:24
**affidavit** [3] - 6:10, 6:13, 22:17
**affluent** [1] - 21:1
**agency** [2] - 18:9, 19:18
**ago** [1] - 11:4
**agree** [4] - 4:7, 23:2, 28:21, 31:11
**agreed** [1] - 24:19
**ahead** [1] - 22:20
**al** [1] - 1:7
**allegation** [2] - 10:24, 20:22
**allegations** [4] - 12:25, 18:10, 18:12, 19:5
**allege** [2] - 18:9, 18:19
**alleging** [2] - 18:7, 25:3
**allow** [1] - 16:25
**alludes** [1] - 17:19
**alone** [1] - 4:11
**alternative** [1] - 17:6
**altogether** [1] - 3:23
**Altonaga** [1] - 23:6
**Altonaga's** [1] - 21:24
**amenable** [1] - 27:23
**amended** [10] - 2:22, 2:23, 3:2, 7:25, 8:2, 8:23, 16:4, 16:19, 16:23, 21:16
**America** [1] - 17:23
**amount** [1] - 20:23
**analogy** [1] - 17:21
**analysis** [1] - 18:6
**Andrews** [1] - 29:20
**annual** [3] - 9:18, 11:24, 14:20
**answer** [3] - 7:24, 10:7, 14:9
**anti** [1] - 24:7
**anti-dilution** [1] - 24:7

**anticipation** [1] - 9:14
**anticipatory** [1] - 21:24
**appearances** [1] - 2:5
**APPEARANCES** [1] - 1:12
**appraisal** [4] - 5:10, 5:12, 24:17, 24:24
**appropriate** [21] - 4:2, 4:9, 5:3, 5:15, 6:3, 7:5, 13:10, 13:13, 16:2, 17:5, 23:20, 24:13, 25:25, 26:3, 26:22, 27:1, 27:6, 27:20, 27:25
**appropriately** [1] - 17:1
**April** [2] - 3:1, 5:17
**area** [2] - 4:12, 6:20
**arguably** [1] - 13:12
**argument** [3] - 2:19, 6:12, 6:14
**arm** [7] - 14:17, 15:6, 15:13, 18:7, 19:5, 19:6, 19:17
**asserting** [1] - 14:3
**assertion** [2] - 19:6, 19:17
**assets** [2] - 10:2, 14:16
**assigned** [2] - 28:15
**assist** [1] - 24:5
**associated** [1] - 5:5
**assume** [1] - 4:24
**attached** [2] - 21:13, 22:25
**attacking** [1] - 5:4
**attorney** [1] - 22:6
**audience** [1] - 21:2
**authorized** [1] - 24:9
**availed** [5] - 19:10, 19:12, 21:21
**Avenue** [3] - 1:15, 1:24, 32:12
**avoid** [1] - 30:12
**award** [1] - 13:4
**aware** [2] - 3:12, 7:9

## B

**background** [1] - 29:3
**Bank** [1] - 17:23
**based** [3] - 20:24, 31:6, 31:8
**basis** [11] - 7:20, 10:24, 14:17, 15:5, 15:6, 15:21, 19:5,

19:7, 19:16, 19:19, 19:21
**bear** [1] - 17:19
**bears** [1] - 3:14
**became** [1] - 12:18
**BEFORE** [1] - 1:10
**begin** [1] - 2:19
**behalf** [1] - 2:11
**best** [1] - 23:25
**between** [3] - 10:23, 11:24, 28:12
**big** [1] - 20:21
**bike** [1] - 10:22
**BISGAARD** [1] - 1:18
**Boca** [1] - 6:20
**Bradley** [1] - 2:12
**breach** [9] - 12:6, 12:19, 12:20, 14:15, 18:1, 18:8, 19:17, 25:5
**BRIAN** [1] - 1:13
**Brian** [2] - 2:7, 8:16
**brief** [1] - 6:11
**briefed** [4] - 2:25, 5:17, 7:6, 30:6
**BRISBOIS** [1] - 1:18
**broad** [1] - 3:12
**brought** [1] - 13:20
**built** [1] - 9:11
**burden** [2] - 3:14, 3:20
**burdens** [1] - 7:2
**business** [4] - 15:15, 19:13, 20:25, 23:2
**BY** [1] - 1:21

## C

**calculation** [1] - 28:17
**candid** [1] - 30:15
**Carbon** [1] - 2:12
**carbon** [1] - 10:22
**CASE** [1] - 1:2
**case** [40] - 2:3, 2:20, 3:25, 4:2, 4:3, 4:7, 8:3, 13:12, 13:19, 15:7, 15:10, 15:18, 15:20, 18:4, 18:17, 19:21, 20:8, 20:10, 21:7, 21:9, 21:15, 21:20, 21:25, 22:18, 23:5, 25:1, 25:2, 25:22, 26:1, 26:13, 26:23, 26:24, 27:19, 27:22, 28:14, 28:20, 29:23
**cases** [11] - 3:13, 3:16, 16:16, 26:20, 26:21, 27:13, 27:15,

27:21, 29:10, 31:6
**centered** [1] - 4:13
**certainly** [1] - 17:5
**certify** [1] - 32:4
**challenge** [1] - 25:25
**challenging** [1] - 25:23
**chance** [2] - 5:24, 26:16
**change** [2] - 15:19, 23:19
**characterization** [1] - 8:18
**Chief** [4] - 21:24, 23:5, 28:15, 29:2
**chooses** [1] - 30:1
**chose** [2] - 5:2, 5:11
**Circuit** [4] - 3:17, 6:23, 23:8
**circumstance** [1] - 26:15
**circumstances** [3] - 11:18, 26:11, 27:6
**citation** [1] - 6:13
**cite** [1] - 15:10
**cited** [4] - 3:16, 21:25, 23:6, 26:21
**claim** [4] - 5:8, 25:2, 25:3, 25:6
**claims** [3] - 5:19, 12:24, 22:22
**clear** [5] - 12:2, 19:1, 20:15, 23:8, 31:8
**clearly** [1] - 18:4
**client** [1] - 24:23
**close** [1] - 15:9
**CM/ECF** [1] - 31:17
**comment** [1] - 18:3
**commercial** [1] - 29:3
**commit** [2] - 12:20, 23:3
**commitment** [2] - 13:22, 22:13
**committed** [1] - 25:5
**committing** [2] - 18:8, 19:18
**common** [1] - 12:21
**communicated** [1] - 22:7
**company** [27] - 2:12, 4:15, 4:21, 4:22, 4:25, 5:9, 5:10, 6:16, 6:17, 9:10, 9:11, 9:12, 9:13, 10:2, 12:15, 13:7, 13:9, 15:3, 15:23, 20:3, 20:17, 20:22, 20:24, 21:22, 24:8, 24:10
**competing** [1] -

**complaint** [17] - 2:22, 2:23, 3:2, 7:25, 8:2, 8:9, 8:23, 9:6, 10:14, 16:4, 16:19, 16:24, 18:13, 21:16, 22:7, 22:21
**completely** [4] - 9:16, 9:23, 29:4, 30:15
**compliance** [1] - 9:18
**complicated** [2] - 27:22, 28:20
**conceivably** [1] - 26:25
**concern** [1] - 31:5
**concerted** [1] - 14:18
**concluded** [1] - 31:25
**conduct** [9] - 5:21, 9:15, 14:15, 15:1, 19:8, 19:9, 19:12, 30:20, 30:22
**conducting** [1] - 15:15
**confer** [2] - 27:14, 30:2
**conference** [6] - 27:20, 27:24, 28:13, 28:25, 29:1, 29:7
**Connecticut** [3] - 4:14, 13:17, 18:14
**connection** [2] - 4:16, 6:21
**considering** [2] - 17:6, 25:11
**consistent** [1] - 10:10
**consolidated** [2] - 21:9, 21:10
**conspiracy** [2] - 12:19, 18:9
**constantly** [1] - 12:7
**constituent** [3] - 4:21, 4:25, 25:20
**constitute** [1] - 31:12
**contact** [2] - 12:7, 30:25
**contacting** [1] - 9:21
**contacts** [3] - 9:5, 15:14, 30:13
**contested** [1] - 6:12
**continue** [2] - 27:3, 27:4
**contract** [3] - 12:6, 18:8, 19:18
**control** [2] - 29:11, 29:18
**convenience** [1] -

4:11
**convenient** [1] - 29:8
**conversion** [1] - 12:20
**coordinated** [4] - 4:2, 14:19, 17:1, 17:13
**copy** [4] - 8:23, 16:20, 16:21, 31:15
**corporate** [13] - 9:20, 10:5, 10:17, 11:15, 12:12, 13:15, 17:8, 17:17, 20:8, 20:11, 20:14, 22:18, 28:20
**corporation** [14] - 2:13, 4:19, 4:20, 8:9, 9:18, 12:14, 14:9, 14:16, 17:20, 19:20, 24:5, 25:9, 25:10, 25:20
**correspondence** [1] - 22:18
**cost** [2] - 3:20, 7:2
**counsel** [11] - 2:5, 6:14, 11:5, 12:12, 16:4, 16:15, 17:4, 17:16, 20:19, 25:1, 28:7
**Counsel** [3] - 12:23, 21:4, 23:15
**couple** [1] - 23:16
**course** [3] - 7:22, 28:10, 30:1
**court** [4] - 15:16, 21:12, 21:25, 25:17
**Court** [14] - 1:23, 1:23, 2:1, 3:12, 3:19, 6:22, 6:23, 8:15, 18:5, 24:15, 25:16, 26:8, 32:11, 32:12
**COURT** [61] - 1:1, 2:2, 2:9, 2:14, 2:19, 3:2, 3:5, 3:8, 3:24, 4:5, 6:2, 6:7, 7:3, 7:12, 7:18, 7:24, 8:2, 8:8, 8:11, 8:14, 8:22, 9:1, 11:4, 12:2, 12:23, 13:3, 13:5, 13:25, 14:2, 14:6, 16:9, 16:22, 16:25, 18:16, 18:21, 19:1, 19:23, 19:25, 20:6, 21:4, 21:11, 22:3, 22:5, 22:11, 23:11, 23:14, 25:21, 26:17, 28:12, 28:24, 29:5, 29:16, 29:22, 30:7, 30:16, 30:19, 31:4, 31:11, 31:14, 31:18, 31:21
**courthouse** [1] -

7:10
**COURTROOM** [1] - 2:3
**courts** [3] - 3:17, 26:1, 26:15
**covers** [2] - 3:5, 3:6
**cow** [1] - 15:8
**create** [1] - 10:21
**created** [1] - 12:1
**credit** [1] - 22:1
**Crotty** [5] - 2:4, 2:11, 12:10, 13:16, 14:20
**CROTTY** [1] - 1:7

## D

**damage** [1] - 13:4
**damages** [7] - 13:2, 13:3, 13:5, 13:6, 13:8, 13:12, 23:24
**Daniel** [1] - 25:6
**Daniels** [15] - 2:3, 2:8, 9:9, 11:5, 11:21, 12:1, 13:25, 17:9, 19:11, 20:13, 21:20, 22:7, 23:25, 25:25, 30:19
**DANIELS** [1] - 1:4
**dark** [3] - 9:10, 9:16, 11:22
**darn** [1] - 15:9
**DARRIN** [1] - 1:10
**DATE** [1] - 24:11
**date** [2] - 6:11, 12:17
**dates** [1] - 31:24
**days** [9] - 2:24, 8:7, 29:7, 29:9, 30:3, 30:18, 30:20, 30:22
**deadline** [2] - 22:7, 22:12
**deadlines** [1] - 31:23
**deal** [2] - 16:8, 27:11
**dealing** [5] - 17:11, 17:12, 17:13, 26:21, 28:22
**dec** [2] - 3:2, 3:4
**decide** [4] - 27:9, 29:19, 29:22, 29:23
**decided** [1] - 27:3
**decides** [1] - 29:19
**deciding** [2] - 26:1, 26:3
**decision** [2] - 15:13, 29:24
**declaration** [3] - 10:13, 22:17, 23:1
**declarations** [4] - 18:6, 18:11, 30:15
**declaratory** [1] - 12:5
**defendant** [1] - 13:11

**defendant's** [1] - 2:15
**defendants** [6] - 1:8, 2:11, 4:17, 14:18, 14:24, 31:9
**DEFENDANTS** [1] - 1:17
**defending** [1] - 15:17
**defense** [2] - 11:4, 28:4
**deference** [1] - 23:9
**Delaware** [59] - 2:13, 2:20, 2:21, 3:25, 4:3, 4:9, 4:13, 4:19, 4:23, 5:2, 5:16, 5:17, 7:14, 8:3, 8:17, 8:19, 9:4, 10:3, 10:12, 13:7, 13:8, 13:10, 13:11, 13:12, 13:15, 13:18, 13:20, 13:23, 14:4, 14:8, 16:4, 16:7, 17:4, 17:12, 21:5, 21:7, 21:8, 21:11, 21:20, 22:9, 22:16, 23:4, 23:19, 24:13, 24:16, 25:14, 25:17, 25:23, 26:13, 26:25, 27:4, 27:5, 29:12, 29:21, 31:16
**delayed** [1] - 5:23
**denied** [2] - 15:19, 19:8
**deny** [1] - 27:7
**denying** [2] - 5:9, 10:10
**DEPUTY** [1] - 2:3
**derivative** [1] - 25:3
**Dervishi** [2] - 2:7, 8:16
**DERVISHI** [37] - 1:13, 1:14, 2:7, 8:15, 8:25, 9:2, 11:11, 12:5, 13:2, 13:4, 13:14, 14:1, 14:5, 14:7, 16:21, 16:23, 17:3, 18:18, 18:23, 19:4, 19:24, 20:5, 20:11, 21:5, 21:13, 22:4, 22:10, 22:12, 23:13, 29:1, 29:15, 29:20, 30:11, 30:18, 31:13, 31:15, 31:19
**described** [1] - 31:6
**describing** [1] - 11:8
**description** [1] - 21:24
**despite** [2] - 17:15, 17:16
**detail** [1] - 18:13
**determination** [1] -

26:8
**determine** [1] - 5:14
**Diaz** [1] - 32:10
**DIAZ** [2] - 1:22,
32:11
**different** [1] - 26:1
**diluted** [3] - 20:15,
24:9, 24:10
**dilution** [1] - 24:7
**directors** [1] - 20:4
**discerning** [2] -
11:25, 21:2
**disclose** [2] - 22:14,
23:3
**disclosed** [2] -
12:14, 12:16
**disclosing** [1] - 11:2
**disclosure** [3] - 9:9,
10:15, 13:22
**discovery** [41] - 3:11,
3:13, 3:18, 3:22, 4:2,
4:6, 4:7, 4:9, 5:21,
5:25, 6:3, 7:21, 7:22,
10:9, 16:16, 16:25,
17:1, 18:17, 18:20,
18:24, 19:4, 19:5,
19:7, 19:15, 19:16,
20:2, 20:3, 20:7,
20:21, 27:4, 27:10,
27:13, 27:16, 29:23,
30:8, 30:9, 30:20,
30:22, 31:7, 31:9,
31:12
**discretion** [1] - 3:12
**discuss** [1] - 27:12
**discussed** [1] -
19:21
**discussions** [1] -
28:8
**dismiss** [7] - 5:22,
6:24, 9:3, 17:13,
21:14, 25:22, 31:15
**dispose** [1] - 3:19
**dispute** [8] - 5:15,
6:16, 7:10, 21:22,
23:2, 23:21, 24:3,
24:13
**distinction** [1] - 25:2
**DISTRICT** [3] - 1:1,
1:1, 1:11
**District** [8] - 1:23,
13:9, 13:13, 14:11,
14:12, 15:20, 26:12,
32:12
**dive** [1] - 26:19
**DIVISION** [1] - 1:2
**docket** [1] - 8:24
**document** [1] - 21:17
**documentation** [3] -
12:16, 20:14, 21:3

**documentations** [1]
- 20:18
**documented** [1] -
20:19
**documents** [6] -
9:17, 9:21, 10:7, 10:9,
10:8, 20:16
**done** [5] - 11:22,
12:11, 20:18, 21:23,
24:19
**dovetails** [1] - 4:10
**down** [2] - 5:21, 21:7
**draft** [2] - 9:6, 22:21
**drop** [1] - 25:19
**due** [1] - 2:23
**duplication** [1] -
27:16
**duty** [10] - 12:6,
12:14, 12:19, 12:20,
14:15, 18:1, 25:5,
25:7, 25:8, 25:10

**E**

**e-mail** [2] - 22:15,
22:25
**early** [6] - 17:14,
27:19, 27:23, 28:5,
28:10, 28:24
**earnings** [1] - 20:24
**effort** [1] - 14:18
**efforts** [1] - 10:21
**either** [3] - 4:5,
25:13, 27:3
**elected** [1] - 5:11
**Eleventh** [3] - 3:17,
6:23, 23:8
**eliminate** [3] - 3:22,
5:25, 15:11
**embrace** [1] - 29:4
**ended** [1] - 20:13
**engage** [1] - 7:2
**engaging** [1] - 7:1
**enter** [1] - 8:5
**entering** [1] - 28:5
**entertain** [1] - 7:19
**entire** [3] - 3:19,
15:20, 26:23
**entitled** [5] - 10:7,
12:13, 17:9, 23:9,
32:6
**entity** [9] - 4:23, 5:6,
5:16, 5:19, 13:16,
13:19, 15:24, 16:1,
25:3
**equity** [2] - 12:22,
15:3
**especially** [1] - 27:22
**ESQ** [4] - 1:13, 1:14,
1:17, 1:18

**essentially** [1] - 6:15
**establish** [1] - 19:15
**et** [1] - 1:7
**event** [1] - 12:17
**events** [2] - 15:22,
19:13
**eventually** [1] -
20:12
**exactly** [2] - 16:17,
23:5
**exception** [1] - 7:9
**exchange** [1] - 9:13
**exclusive** [1] - 11:14
**excuse** [1] - 23:16
**exhibit** [1] - 9:1
**exist** [1] - 10:1
**existence** [2] - 4:22,
5:1
**expect** [1] - 10:16
**expectation** [3] -
21:5, 21:7, 21:19
**expected** [1] - 2:25
**experience** [1] -
28:22
**experienced** [3] -
9:15, 9:16, 28:16
**explanation** [1] -
20:12
**extent** [2] - 12:7,
31:8
**extraordinary** [1] -
10:21

**F**

**fact** [6] - 11:17,
16:11, 23:19, 24:2,
24:9, 27:2
**factor** [1] - 26:2
**factors** [1] - 28:16
**facts** [2] - 6:12,
25:12
**falls** [1] - 23:5
**far** [4] - 13:19, 20:9,
24:12, 28:8
**Fargo** [1] - 17:23
**father** [1] - 6:19
**father-in-law** [1] -
6:19
**FCRR** [2] - 1:22,
32:11
**few** [3] - 22:2, 22:10,
22:19
**fiduciary** [10] - 12:6,
12:14, 12:19, 12:20,
14:15, 18:1, 25:5,
25:7, 25:10
**file** [13] - 10:14,
13:21, 16:5, 18:6,
18:11, 21:15, 21:18,

22:22, 26:9, 26:12,
31:17, 31:18
**Filed** [5] - 7:4, 7:8,
7:9, 23:10, 23:19
**filed** [32] - 2:22, 3:22,
5:12, 6:9, 6:10, 6:13,
7:4, 7:14, 7:25, 8:5,
8:23, 8:25, 9:2, 14:22,
16:4, 21:11, 21:14,
21:17, 22:1, 22:2,
22:8, 22:9, 22:15,
22:16, 22:18, 22:19,
22:20, 23:4, 25:22,
25:24, 26:11
**filing** [7] - 14:20,
21:23, 21:24, 23:9,
23:18, 31:17
**financials** [1] - 24:24
**fine** [1] - 25:2, 31:18
**firm** [1] - 17:3
**firms** [1] - 14:20
**first** [9] - 2:17, 7:10,
8:17, 9:25, 13:14,
21:23, 23:9, 26:18,
27:9
**First** [5] - 7:4, 7:8,
7:9, 23:10, 23:19
**First-Filed** [1] -
23:19
**Floor** [2] - 1:24,
32:12
**FLORIDA** [1] - 1:1
**Florida** [41] - 1:4,
1:16, 1:20, 1:25, 4:16,
4:20, 5:25, 6:16, 6:17,
6:18, 6:21, 8:21, 9:18,
10:2, 11:11, 11:14,
13:7, 13:9, 13:13,
14:16, 14:18, 14:22,
15:14, 15:15, 15:18,
15:23, 16:1, 17:9,
17:18, 18:15, 19:9,
19:14, 19:20, 24:16,
25:13, 26:6, 26:10,
26:13, 32:13
**fluent** [1] - 11:25
**focused** [1] - 8:20
**footnote** [1] - 6:2
**FOR** [2] - 1:13, 1:17
**foregoing** [1] - 32:4
**Fort** [1] - 1:20
**forum** [4] - 5:2, 5:3,
7:11, 7:14
**forward** [2] - 17:1,
26:24
**founded** [1] - 6:25
**founder** [1] - 24:10
**founder's** [1] - 6:9
**FPR** [2] - 1:22, 32:11
**frankly** [1] - 6:17

**fraud** [4] - 11:16,
14:12, 14:13, 14:14
**freeze** [1] - 15:10
**freeze-out** [1] - 15:10
**front** [2] - 21:8, 21:18
**frozen** [1] - 24:22
**fully** [3] - 2:25, 5:16,
30:5

**G**

**GAYLES** [1] - 1:10
**generally** [2] - 3:6,
18:7
**given** [6] - 9:17,
17:15, 22:1, 27:2,
27:6, 30:20
**Goodman** [4] -
28:14, 28:15, 29:2,
29:6
**granted** [1] - 3:22
**greed** [1] - 20:13

**H**

**Hanzman's** [1] - 15:8
**happenstance** [1] -
15:18
**happy** [2] - 9:6,
22:23
**harm** [3] - 10:9,
10:11, 17:7
**Harrison** [1] - 2:11
**heard** [2] - 2:17,
23:21
**hearing** [2] - 30:25,
31:1
**HEARING** [1] - 1:10
**helpful** [3] - 15:7,
17:14, 28:23
**hereby** [1] - 32:4
**history** [1] - 22:23
**hold** [1] - 5:3
**Honor** [47] - 2:7,
2:10, 2:18, 2:21, 3:4,
3:9, 4:4, 4:22, 5:24,
6:6, 7:7, 7:19, 8:13,
8:15, 8:17, 11:10,
11:11, 13:2, 14:13,
16:21, 17:6, 17:19,
17:22, 18:19, 18:23,
21:6, 21:8, 21:18,
21:19, 22:4, 22:10,
23:13, 23:17, 23:22,
24:14, 25:17, 26:5,
28:4, 28:19, 29:4,
29:14, 30:11, 30:18,
31:3, 31:13, 31:16,
31:20
**Honor's** [1] - 4:10

**HONORABLE** [1] - 1:10
**honoring** [1] - 15:2
**hot** [2] - 12:1, 21:1
**hours** [3] - 22:2, 22:10, 22:19

## I

**ideal** [1] - 29:3
**identified** [1] - 10:6
**importantly** [1] - 4:22
**Inc** [1] - 2:12
**including** [2] - 3:13, 3:16
**incorporated** [1] - 6:19
**increase** [1] - 7:2
**independent** [1] - 19:11
**indicate** [1] - 6:3
**indicated** [1] - 28:7
**individual** [3] - 17:10, 17:11
**individuals** [1] - 4:12
**information** [5] - 17:15, 22:14, 24:18, 24:21, 24:22
**infringement** [1] - 15:17
**injunction** [1] - 5:8
**injury** [1] - 19:20
**inquire** [1] - 30:13
**insightful** [1] - 23:22
**instance** [3] - 4:8, 11:20, 25:9
**interest** [11] - 5:4, 5:5, 9:23, 10:16, 11:1, 12:16, 14:9, 15:22, 15:25, 20:15, 24:10
**interesting** [1] - 25:21
**interestingly** [1] - 6:9
**interrupt** [2] - 12:23, 16:9
**intertwined** [2] - 20:1, 20:2
**involves** [1] - 15:10
**Island** [2] - 13:17, 18:14
**issue** [7] - 5:19, 14:3, 17:7, 26:18, 27:8, 27:11, 31:23
**issues** [12] - 3:5, 3:6, 4:1, 4:6, 5:4, 5:24, 7:16, 25:12, 25:18, 26:17, 28:19, 28:20
**issuing** [1] - 30:23

**item** [1] - 21:1
**itself** [1] - 12:15

## J

**Jacobs** [1] - 2:8
**JACOBS** [1] - 1:14
**January** [1] - 22:13
**Jersey** [2] - 4:14, 13:17
**Joyce** [2] - 2:10
**JOYCE** [28] - 1:17, 2:10, 2:18, 2:21, 3:4, 3:6, 3:9, 4:4, 4:7, 6:5, 6:8, 7:6, 7:13, 7:19, 8:1, 8:4, 8:10, 8:13, 11:10, 23:16, 26:4, 28:4, 28:18, 29:13, 30:5, 31:3, 31:5, 31:20
**Judge** [11] - 6:15, 15:8, 15:18, 21:24, 23:5, 28:14, 28:15, 29:2, 29:6, 29:20
**JUDGE** [1] - 1:11
**judge** [12] - 16:7, 27:24, 28:16, 29:12, 29:18, 29:19, 29:21, 29:22, 29:23, 29:25, 30:1
**July** [1] - 29:5
**June** [2] - 8:20, 9:25
**jurisdiction** [33] - 5:18, 5:23, 10:25, 13:18, 14:3, 14:8, 14:17, 15:5, 15:6, 15:13, 16:2, 16:14, 16:18, 17:21, 18:22, 19:6, 19:12, 19:17, 19:19, 19:22, 21:22, 25:4, 25:11, 25:19, 25:23, 26:5, 26:9, 27:9, 27:17, 30:14, 31:7, 31:10
**jurisdictional** [14] - 6:3, 7:22, 18:5, 18:16, 18:20, 18:24, 19:4, 19:7, 20:2, 20:23, 26:18, 30:5, 30:20, 30:22

## K

**Ken** [1] - 2:10
**KENNETH** [1] - 1:17
**kept** [1] - 9:16
**kind** [2] - 4:10, 14:3
**knowing** [1] - 11:2

## L

**lack** [1] - 25:18
**laid** [1] - 18:13
**largely** [1] - 20:7
**largest** [1] - 24:20
**Lauderdale** [1] - 1:20
**law** [11] - 4:20, 4:24, 5:16, 5:17, 6:19, 9:18, 11:11, 11:15, 12:21, 17:3, 23:7
**lawsuit** [4] - 13:21, 14:25, 17:12, 23:4
**lawyer** [3] - 6:20, 9:4, 22:19
**lays** [1] - 18:5
**lead** [1] - 31:7
**least** [8] - 7:20, 10:10, 10:16, 13:22, 17:7, 17:8, 17:14, 17:16
**left** [4] - 9:10, 9:14, 15:3, 17:21
**LEWIS** [1] - 1:18
**life** [1] - 9:13
**light** [1] - 11:18
**likely** [3] - 3:20, 25:13
**limited** [1] - 30:12
**line** [1] - 16:17
**list** [1] - 10:6
**litigate** [1] - 13:10
**litigation** [4] - 17:12, 23:1, 27:3, 29:3
**live** [3] - 4:12, 4:17, 13:17
**lived** [1] - 6:20
**LLP** [1] - 1:18
**lodged** [2] - 25:3, 26:7
**long-arm** [7] - 14:17, 15:6, 15:13, 18:7, 19:5, 19:6, 19:17
**look** [6] - 8:22, 17:22, 25:17, 30:3, 30:8, 30:23
**looking** [1] - 21:6
**looks** [1] - 6:4
**lost** [1] - 16:11
**LUKE** [1] - 1:14
**Luke** [1] - 2:8

## M

**Macris** [4] - 2:11, 12:10, 13:16, 14:21
**magistrate** [3] - 27:24, 28:6, 28:16
**Magistrate** [2] - 28:15, 29:2

**mail** [2] - 22:15, 22:25
**majority** [1] - 9:19
**manage** [1] - 3:13
**March** [4] - 1:5, 2:23, 8:6, 32:10
**Marcum** [2] - 24:19, 24:25
**market** [1] - 12:1
**Martin** [1] - 2:11
**MARTIN** [1] - 1:7
**material** [2] - 11:16, 11:17
**matter** [5] - 10:24, 24:8, 24:16, 27:3, 32:6
**mean** [14] - 3:24, 6:6, 17:10, 19:25, 20:4, 20:6, 20:7, 20:17, 21:6, 25:21, 27:20, 28:20, 29:11
**meantime** [1] - 30:3
**meat** [1] - 3:7
**mediate** [1] - 27:24
**mediation** [5] - 27:19, 28:5, 28:10, 28:13, 28:25
**mediator** [2] - 28:6, 28:21
**meeting** [1] - 9:20
**meetings** [1] - 9:19
**mentioned** [2] - 22:5, 25:2
**merged** [3] - 4:21, 4:25, 29:25
**merger** [14] - 4:19, 7:17, 8:20, 11:6, 11:12, 11:15, 11:21, 13:6, 14:25, 15:11, 19:11, 24:1, 24:2
**mergers** [1] - 28:22
**merging** [1] - 14:23
**merit** [2] - 3:11, 7:21
**merits** [6] - 19:24, 20:3, 24:12, 30:13, 31:6, 31:8
**merits-based** [2] - 31:6, 31:8
**MIAMI** [1] - 1:2
**Miami** [6] - 1:4, 1:16, 1:24, 1:25, 32:12, 32:13
**might** [5] - 26:23, 27:1, 27:20, 27:25, 28:23
**milestone** [1] - 19:13
**million** [2] - 11:24, 20:23
**minimum** [1] - 15:14
**minority** [4] - 11:12,

15:11, 24:4, 24:6
**misconduct** [1] - 18:12
**misleading** [2] - 11:19, 15:2
**misrepresentation** [1] - 11:17
**moment** [2] - 11:4, 16:10
**momentarily** [1] - 17:18
**money** [1] - 21:2
**months** [1] - 5:12
**Moreno** [2] - 15:8, 15:18
**morning** [2] - 2:7, 2:14
**motion** [26] - 2:15, 3:9, 3:18, 3:21, 5:22, 6:2, 7:3, 9:3, 15:19, 16:3, 16:5, 16:12, 21:11, 21:13, 21:14, 21:15, 25:19, 25:22, 26:9, 26:12, 27:7, 30:4, 30:5, 31:1, 31:15
**MOTION** [1] - 1:10
**motions** [7] - 6:24, 16:13, 17:13, 25:18, 26:7, 26:22
**MR** [62] - 2:7, 2:10, 2:18, 2:21, 3:4, 3:6, 3:9, 4:4, 4:7, 6:5, 6:8, 7:6, 7:13, 7:19, 8:1, 8:4, 8:10, 8:13, 8:15, 8:25, 9:2, 11:10, 11:11, 12:5, 13:2, 13:4, 13:14, 14:1, 14:5, 14:7, 16:21, 16:23, 17:3, 18:18, 18:23, 19:4, 19:24, 20:5, 20:11, 21:5, 21:13, 22:4, 22:10, 22:12, 23:13, 23:16, 26:4, 28:4, 28:18, 29:1, 29:13, 29:15, 29:20, 30:5, 30:11, 30:18, 31:3, 31:5, 31:13, 31:15, 31:19, 31:20
**mutually** [1] - 29:8

## N

**necessarily** [1] - 20:2
**necessary** [1] - 11:17
**need** [7] - 3:22, 5:25, 22:13, 27:8, 30:10,

30:16, 30:25
**negotiations** [1] - 22:24
**never** [4] - 12:13, 12:15, 12:16, 20:20
**New** [2] - 4:14, 13:17
**next** [3] - 17:24, 29:7
**nice** [1] - 12:20
**NO** [1] - 1:2
**none** [2] - 4:17, 13:18
**North** [2] - 1:24, 32:12
**note** [1] - 28:14
**nothing** [3] - 6:18, 10:20, 12:18
**notice** [2] - 11:12, 20:19
**notwithstanding** [1] - 23:18
**number** [1] - 20:3

**O**

**obligations** [4] - 3:10, 3:14, 4:25, 7:21
**obviously** [2] - 6:6, 28:8
**occur** [1] - 29:7
**occurred** [4] - 8:21, 14:13, 14:15, 18:2
**OF** [1] - 1:1
**offering** [1] - 19:2
**office** [2] - 18:9, 19:18
**officers** [1] - 4:15
**Official** [1] - 32:11
**official** [1] - 1:23
**omission** [1] - 11:17
**one** [14] - 6:19, 9:11, 12:9, 16:7, 16:20, 17:21, 17:23, 19:13, 24:20, 25:14, 26:4, 26:17, 27:15, 31:3
**online** [2] - 10:22, 17:22
**operating** [2] - 15:15, 18:8
**opinion** [1] - 28:24
**opportunity** [1] - 3:20
**oppose** [1] - 8:7
**opposed** [3] - 2:16, 13:10, 16:12
**opposing** [2] - 16:15, 28:7
**opposition** [2] - 9:2, 21:14
**order** [4] - 27:18, 29:10, 30:24, 31:23

**Order** [1] - 2:1
**original** [1] - 8:9
**owe** [2] - 25:7
**owed** [1] - 25:10
**own** [1] - 27:25
**owns** [1] - 14:16

**P**

**P.A** [1] - 1:14
**Pages** [1] - 1:8
**paper** [2] - 9:25, 17:21
**paperless** [1] - 31:23
**papers** [4] - 9:2, 14:22, 16:7, 16:8
**parallel** [3] - 7:1, 16:16, 25:15
**part** [1] - 20:21
**participating** [1] - 31:12
**participation** [1] - 31:6
**particular** [2] - 4:8, 27:8
**particularly** [1] - 5:5
**parties** [13] - 4:1, 7:2, 8:18, 13:11, 13:14, 14:11, 16:18, 20:9, 21:21, 27:10, 27:12, 27:23, 29:9
**party** [2] - 8:19, 13:15
**PATRICIA** [2] - 1:22, 32:11
**PAUL** [1] - 1:4
**Paul** [1] - 2:8
**pay** [1] - 13:12
**PCW** [1] - 4:23
**peek** [3] - 6:24, 25:18, 30:7
**pending** [6] - 13:20, 13:23, 16:3, 21:8, 21:15, 26:22
**Pennsylvania** [2] - 4:13, 14:1
**percent** [6] - 9:13, 10:18, 10:19, 12:22, 15:2, 20:20
**perhaps** [2] - 27:25
**period** [3] - 8:6, 18:24, 24:11
**permitting** [1] - 4:1
**person** [1] - 12:9
**personal** [7] - 5:23, 14:2, 14:3, 14:9, 18:22, 25:23, 27:9
**personally** [1] - 25:7
**perspective** [1] - 28:4

**piece** [2] - 9:25, 17:21
**place** [7] - 7:15, 11:13, 13:10, 15:23, 19:14, 23:20, 24:13
**places** [1] - 25:14
**plaintiff** [7] - 2:8, 2:16, 4:14, 4:17, 6:6, 7:21, 30:9
**Plaintiff** [1] - 1:5
**PLAINTIFF** [1] - 1:4
**plaintiffs** [2] - 2:6, 8:12
**plate** [1] - 29:6
**Plattner** [1] - 22:19
**pleading** [1] - 2:22
**pleadings** [1] - 7:24
**podium** [1] - 28:3
**point** [4] - 4:10, 5:14, 6:11, 31:3
**points** [1] - 23:16
**position** [2] - 4:20, 15:3
**positions** [1] - 6:10
**possibility** [3] - 3:21, 6:23, 26:5
**practice** [1] - 23:7
**precedents** [1] - 26:14
**preemptive** [2] - 21:23, 24:7
**preference** [2] - 28:12, 28:18
**preliminarily** [1] - 5:17
**preliminary** [1] - 3:18
**premised** [2] - 9:9, 15:13
**pretrial** [1] - 3:13
**pretty** [2] - 15:9, 21:17
**primarily** [1] - 2:15
**primary** [1] - 13:11
**Princeton** [1] - 2:12
**prioritizing** [1] - 27:10
**private** [1] - 28:6
**problem** [2] - 27:10, 28:5
**procedure** [1] - 11:21
**proceed** [4] - 5:11, 11:13, 27:22, 28:1
**Proceedings** [1] - 31:25
**proceedings** [4] - 3:21, 7:1, 25:15, 32:5
**proceeds** [1] - 4:8
**process** [1] - 24:24

**procured** [1] - 11:16
**product** [1] - 19:14
**proper** [1] - 18:22
**properly** [2] - 20:15, 20:18
**property** [2] - 14:10, 15:21
**proponent** [1] - 3:14
**proposed** [3] - 27:14, 29:9, 30:2
**provide** [1] - 16:6
**provided** [2] - 24:17, 24:20
**provides** [1] - 11:15
**public** [1] - 24:8
**purposefully** [1] - 19:16
**purposely** [1] - 19:10
**pursuant** [1] - 4:24
**pursue** [1] - 11:19
**put** [3] - 9:12, 10:21, 20:23

**Q**

**questions** [1] - 16:13
**quick** [1] - 23:16
**quite** [2] - 9:7, 18:13

**R**

**R.G.A** [1] - 29:16
**raise** [3] - 4:11, 26:4, 31:3
**raised** [1] - 25:18
**ran** [1] - 7:10
**re** [2] - 16:5, 21:15
**re-file** [2] - 16:5, 21:15
**reach** [1] - 28:9
**reached** [1] - 22:23
**ready** [1] - 10:14
**really** [4] - 4:16, 5:3, 6:21, 7:3, 15:1, 15:3, 15:7, 15:25, 16:12, 21:25, 27:18
**reason** [5] - 5:2, 6:25, 12:25, 24:3, 25:15
**reasonableness** [1] - 3:15
**receive** [1] - 24:18
**received** [1] - 17:20
**recess** [1] - 31:22
**record** [2] - 6:13, 24:8
**records** [5] - 4:14, 10:17, 17:8, 20:12, 24:14
**red** [1] - 15:8

**refer** [2] - 4:23, 29:6
**referring** [1] - 6:14
**regard** [2] - 7:4, 27:8
**regarding** [3] - 5:4, 15:22, 15:23
**related** [1] - 15:17
**relied** [1] - 24:25
**relief** [2] - 12:5, 23:23
**rely** [1] - 24:24
**rem** [2] - 5:18, 14:10
**remedies** [3] - 11:19, 12:3
**remedy** [2] - 11:14, 13:1
**reply** [4] - 2:24, 7:6, 8:7, 23:15
**report** [1] - 24:25
**REPORTED** [1] - 1:21
**Reporter** [2] - 1:23, 32:11
**reports** [1] - 14:20
**representations** [1] - 15:22
**request** [3] - 10:5, 17:16
**requesting** [1] - 19:2
**required** [1] - 4:24
**requires** [1] - 24:17
**reside** [1] - 18:14
**resides** [1] - 13:25
**resolution** [2] - 3:18, 28:9
**resolve** [3] - 23:2, 26:18, 26:23
**resolved** [2] - 9:8, 27:17
**respond** [3] - 2:24, 10:13, 18:12
**response** [7] - 2:22, 6:12, 8:5, 8:8, 10:4, 13:20, 22:25
**result** [1] - 11:16
**retirement** [1] - 17:22
**retires** [1] - 29:5
**reviewing** [1] - 30:10
**Rhode** [2] - 13:17, 18:14
**Richard** [2] - 18:4, 29:20
**rights** [6] - 4:24, 5:11, 5:12, 24:7, 24:17
**RPR** [2] - 1:22, 32:11
**Rule** [8] - 3:10, 7:4, 7:8, 7:9, 7:20, 23:10, 23:19
**rule** [2] - 5:24, 27:18

**ruling** [2] - 27:11, 30:23
**run** [1] - 7:14

## S

**sales** [1] - 11:24
**sandbagged** [1] - 9:4
**schedule** [2] - 8:3, 27:14, 30:2
**scheduling** [1] - 29:10
**Schwartz** [1] - 2:10
**SCHWARTZ** [1] - 1:18
**SE** [2] - 1:15, 1:19
**seated** [1] - 2:2
**second** [1] - 3:1
**Secretary** [2] - 14:21, 14:22
**see** [4] - 4:12, 16:19, 20:8, 28:10
**seeking** [10] - 3:10, 11:5, 11:9, 12:4, 13:1, 13:5, 13:6, 13:8, 18:16, 25:4
**sell** [5] - 9:23, 10:16, 10:22, 11:23, 12:13
**send** [1] - 21:7
**sent** [5] - 9:6, 10:4, 11:2, 22:21
**serious** [1] - 23:3
**set** [1] - 16:7
**settlement** [11] - 9:5, 9:7, 10:15, 22:24, 27:19, 27:23, 28:13, 28:25, 29:1, 29:7
**seven** [2] - 2:24, 8:7
**seven-day** [1] - 2:24
**several** [1] - 9:21
**share** [1] - 22:14
**shareholder** [6] - 10:7, 10:8, 11:12, 15:11, 24:4, 24:6
**shareholders** [4] - 9:20, 12:15, 17:17, 18:1
**shares** [5] - 11:7, 11:23, 12:8, 12:11, 24:9
**sharp** [1] - 23:6
**shop** [2] - 7:11, 7:14
**short** [1] - 18:24
**showing** [1] - 3:15
**Siegmund** [5] - 15:7, 18:3, 18:4, 19:21, 25:1
**signed** [2] - 14:22, 24:5
**silence** [1] - 23:4

**simple** [1] - 10:5
**simply** [1] - 11:6
**single** [1] - 17:21
**situation** [1] - 26:19
**six** [1] - 5:12
**small** [2] - 20:3
**SMITH** [1] - 1:18
**sometime** [1] - 2:25
**somewhere** [4] - 26:24, 26:25, 27:2, 27:4
**sorry** [5] - 8:22, 12:23, 13:25, 16:9, 22:5
**sort** [3] - 17:25, 22:1, 23:9
**sound** [1] - 27:22
**Southern** [6] - 13:9, 13:13, 14:11, 14:12, 15:20, 26:12
**SOUTHERN** [1] - 1:1
**specific** [2] - 28:18, 28:22
**STACY** [1] - 1:18
**Stacy** [1] - 2:10
**stage** [1] - 7:1
**start** [2] - 30:7, 30:10
**starting** [2] - 2:5, 28:2
**starts** [2] - 15:3, 19:24
**startup** [2] - 10:20, 11:23
**state** [1] - 2:5
**State** [2] - 14:21, 14:23
**statements** [1] - 1:18
**STATES** [2] - 1:1, 1:11
**States** [2] - 1:23, 32:12
**status** [2] - 2:20, 9:22
**statute** [5] - 10:5, 11:14, 18:7, 24:16
**Statute** [2] - 17:9, 17:18
**statutory** [1] - 10:5
**stay** [15] - 2:16, 3:9, 3:10, 3:14, 3:18, 7:20, 10:9, 16:12, 16:15, 17:7, 17:13, 26:3, 26:22, 27:5, 29:23
**stealing** [1] - 12:22
**STENOGRAPHICA LLY** [1] - 1:21
**stiffed** [1] - 9:23
**still** [1] - 26:9
**stipulation** [2] - 8:5,

16:6
**stock** [6] - 5:18, 5:19, 5:20, 7:17, 9:22, 12:18
**stockholders** [1] - 10:17
**story** [1] - 15:5
**Street** [1] - 1:19
**subject** [2] - 10:24, 13:18, 14:8
**submit** [2] - 29:9, 30:2
**substance** [2] - 25:17, 30:8
**substantial** [2] - 19:10, 30:14
**substantive** [2] - 4:1, 16:13
**substantively** [1] - 30:10
**successful** [3] - 10:23, 17:10, 26:10
**suggest** [1] - 7:8
**Suite** [2] - 1:15, 1:19
**support** [1] - 6:10
**supposed** [1] - 26:2
**surrounding** [2] - 7:16, 25:12
**survived** [1] - 4:19
**surviving** [3] - 4:21, 4:23, 5:6
**sweat** [1] - 12:22

## T

**temporary** [1] - 7:20
**tendered** [1] - 11:1
**terms** [4] - 10:9, 10:24, 19:14, 23:10
**testing** [1] - 19:14
**THE** [63] - 1:10, 1:13, 1:17, 2:2, 2:9, 2:14, 2:19, 3:2, 3:5, 3:8, 3:24, 4:5, 6:2, 6:7, 7:3, 7:12, 7:18, 7:24, 8:2, 8:8, 8:11, 8:14, 8:22, 9:1, 11:4, 12:2, 12:23, 13:3, 13:5, 13:25, 14:2, 14:6, 16:9, 16:22, 16:25, 18:16, 18:21, 19:1, 19:23, 19:25, 20:6, 21:4, 21:11, 22:3, 22:5, 22:11, 23:11, 23:14, 25:21, 26:17, 28:12, 28:24, 29:5, 29:16, 29:22, 30:7, 30:16, 30:19, 31:4, 31:11, 31:14, 31:18, 31:21
**theft** [2] - 12:21, 20:14
**themselves** [3] - 19:10, 19:12, 21:21
**thinking** [2] - 28:19, 30:21
**Third** [1] - 23:8
**third** [1] - 3:1
**thoughts** [1] - 28:2
**three** [2] - 15:16, 20:24
**timeline** [1] - 30:21
**timing** [1] - 23:18
**tip** [1] - 29:14
**today** [3] - 8:5, 16:20, 31:24
**tongue** [1] - 29:14
**took** [3] - 5:12, 15:23, 19:13
**topic** [1] - 12:1
**tort** [2] - 18:8, 19:18
**tortious** [1] - 14:14
**total** [1] - 30:21
**touch** [2] - 7:7, 31:8
**track** [1] - 18:7
**transcription** [1] - 32:5
**transfer** [6] - 9:3, 21:12, 21:13, 26:10, 26:12, 31:16
**try** [1] - 30:12
**trying** [6] - 5:8, 5:14, 7:8, 9:8, 9:22, 11:6
**tubeless** [1] - 10:22
**Tuesday** [1] - 30:6
**turn** [1] - 8:11
**two** [6] - 9:12, 10:21, 16:16, 25:14, 25:25, 28:12
**type** [2] - 9:14, 20:17
**typically** [1] - 27:17

## U

**ultimately** [2] - 23:22, 23:23
**under** [5] - 10:5, 11:11, 11:14, 17:9, 26:10
**undertake** [1] - 7:16
**undo** [1] - 5:7
**unfair** [1] - 15:12
**unfairly** [1] - 15:12
**unfortunately** [1] - 22:20
**unique** [1] - 26:20
**UNITED** [2] - 1:1, 1:11
**united** [1] - 1:23
**United** [1] - 32:12

**theft** [2] - 12:21, 20:14

**unnecessary** [1] - 27:16
**unwind** [2] - 5:7, 11:5
**unwound** [1] - 13:6
**up** [6] - 4:15, 9:11, 10:3, 16:17, 20:13, 24:5

## V

**valuation** [4] - 20:22, 24:3, 24:19, 24:23
**value** [5] - 5:5, 5:9, 5:10, 7:16, 11:7, 11:13, 12:7, 15:12, 16:1, 20:23, 23:25
**venue** [16] - 4:9, 5:15, 5:23, 14:3, 15:19, 15:21, 16:2, 16:5, 16:14, 23:20, 25:19, 25:23, 25:25, 26:6, 26:9, 27:1
**versus** [2] - 2:4, 28:13
**viewpoints** [1] - 27:21
**virtually** [1] - 6:18
**voluntarily** [1] - 31:9
**vs** [1] - 1:6

## W

**Wagner** [1] - 18:4
**waiver** [2] - 31:7, 31:12
**waiving** [1] - 31:9
**wants** [2] - 7:21, 23:25
**weeds** [1] - 30:12
**week** [1] - 3:1
**weigh** [2] - 3:20, 26:16
**weighs** [1] - 6:22
**WEISSMAN** [1] - 1:14
**welcome** [1] - 29:1
**well-founded** [1] - 6:25
**Wells** [1] - 17:23
**Werntz** [3] - 2:12, 13:16, 14:21
**whatsoever** [1] - 4:16
**wheel** [1] - 10:22
**wheels** [2] - 11:25, 21:1
**whole** [1] - 15:5
**wiped** [1] - 10:1
**withdraw** [1] - 11:20

**withdrew** [1] - 16:5
**witnesses** [1] - 20:9
**wondering** [1] - 20:1
**word** [1] - 12:21
**Works** [1] - 2:12
**world** [1] - 24:20
**worst** [1] - 23:1
**worth** [1] - 10:20
**wrote** [1] - 15:8

## Y

**years** [4] - 9:12, 9:21, 10:21, 15:16

## Z

**zero** [1] - 17:25