IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRINCETON CARBONWORKS, INC.,

    *Plaintiff*,

       v.

                                No. 25-cv-00131-SB

PAUL DANIELS,

    *Defendant*.

---

Francis G.X. Pileggi, Aimee M. Czachorowski, LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, Delaware.

                                    *Counsel for Plaintiff.*

David A. Jenkins, Brian S. Dervishi, Daniel Taylor, SMITH, KATZENSTEIN, & JENKINS LLP, Wilmington, Delaware.

                                  *Counsel for Defendant.*

---

**MEMORANDUM OPINION**

September 17, 2025

BIBAS, *Circuit Judge*, sitting by designation.

Professional cyclists will pay a lot for fast bikes. For the last ten years, Princeton Carbonworks has made a good business selling light carbon-fiber bicycle wheels designed for speed. Recently, management tried to squeeze out one of its minority shareholders, Paul Daniels, through a merger. Anticipating imminent litigation, Princeton Carbonworks sued him first, seeking a declaration that it had valued his shares accurately and that the merger had effectively extinguished his interest in the

company. But this Court lacks personal jurisdiction over both him and his shares. And the interest of justice does not warrant a transfer to another judicial district. So I dismiss Princeton Carbonworks' suit without prejudice.

## I.    BACKGROUND

Martin Crotty, Harrison Macris, and Bradley Werntz founded Princeton Carbonworks in 2015 "to create and sell high-performance bicycle wheels." First Am. Compl., D.I. 11 ¶¶ 13–14. Daniels claims that he, too, is a cofounder, and that he worked with Crotty to create Princeton Carbonworks after the men met at a bike shop in Princeton, New Jersey. D.I. 15 at 2–3. Daniels asserts that he "was involved with [the company] in a number of capacities" from 2014 to 2019, including "as an unpaid consultant, provider of bridge financing, director of business development, and chief operating officer." *Id.* at 3. Though Princeton Carbonworks disputes that Daniels cofounded it, it acknowledges that Daniels was an employee until 2019. First Am. Compl., D.I. 11 ¶ 18.

Daniels lives in Pennsylvania; the other men live in New Jersey, Rhode Island, and Connecticut. D.I. 15 at 16–17; D.I. 16 at 21. The company was incorporated in Florida and has been headquartered in Connecticut since 2017. D.I. 16 at 21.

In June 2018, the directors and Princeton Carbonworks agreed to issue Daniels 185 shares "in consideration for his past services." First Am. Compl., D.I. 11 ¶ 15. The 185 shares were an 18.5% stake in the company. *Id.* Ten months later, Daniels quit his job at Princeton Carbonworks. *Id.* ¶ 18. Then, in late 2019, the board of directors entered into a stock-management plan, issued more shares, and awarded them to Crotty, Macris, Werntz, and another director named Richard Furchtgott. *Id.* ¶ 19.

2

In 2024, the directors formed a new Princeton Carbonworks entity in Delaware. *Id.* ¶ 20. (Call this entity Princeton-Delaware, as distinct from the older Princeton-Florida.) Crotty, Macris, Werntz, and Furchtgott exchanged their shares in Princeton-Florida for shares in Princeton-Delaware, "resulting in Princeton-Delaware owning 93.15% of the shares in Princeton-Florida." *Id.* Princeton-Florida soon merged into Princeton-Delaware. *Id.* ¶ 21.

The merger was structured to squeeze Daniels out. Under the merger agreement, "shareholders owning less than 10% of Princeton-Florida's issued and outstanding shares immediately prior to the effective time of the [m]erger would be cancelled and exchanged for a payment of fair value." *Id.* ¶ 23. The stock-management plan from 2019 had diluted Daniels's ownership stake in Princeton-Florida from 18.5% to 6.85%. *Id.* ¶¶ 15, 24. Daniels was notified of the merger, of the company's estimate that the fair market value of his 6.85% stake was $173,000, and of his right to reject that valuation and seek appraisal. *Id.* ¶ 25. He rejected the offer, withdrew from the appraisal process, and then threatened litigation. *Id.* ¶¶ 25–28.

Princeton-Delaware beat him to the punch, filing this action against him first in the Delaware Court of Chancery. *See generally* Compl., D.I. 1, Ex. 1. The complaint sought a declaration (1) that the merger had extinguished Daniels's ownership in Princeton-Florida, (2) that Daniels had owned 6.85% of its outstanding stock, and (3) that the company had valued his shares correctly. *See id.* ¶¶ 23, 30, 37. Soon, Daniels filed his own suit against Crotty, Macris, Werntz, Princeton-Florida, and Princeton-Delaware in the U.S. District Court for the Southern District of Florida.

That suit claims breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conspiracy, and conversion, and seeks declaratory relief, an accounting, and an inspection of corporate records. *See generally* Compl., D.I. 1, *Daniels v. Crotty*, No. 1:25-cv-20137-DPG (S.D. Fla. Jan. 9, 2025).

Daniels removed the Delaware suit to this Court and moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). D.I. 1; D.I. 7. Princeton-Delaware then amended its complaint to bolster its jurisdictional allegations. *See generally* First Am. Compl., D.I. 11 ¶¶ 6–10. Daniels again moves to dismiss for lack of personal jurisdiction, or alternatively, to transfer this case to the Southern District of Florida. *See generally* D.I. 14–15. In reviewing his motion to dismiss, I accept the facts laid out in Princeton Carbonworks' First Amended Complaint and brief in opposition as true. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007).

## II. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DANIELS OR THE STOCK

Princeton Carbonworks offers two theories of personal jurisdiction: either in personam jurisdiction over Daniels because he purports to own stock in Princeton-Delaware and the legal situs of stock in Delaware corporations is Delaware, or quasi in rem or in rem jurisdiction over Daniels's Princeton-Delaware stock itself. D.I. 16 at 9, 13–14. But neither approach works.

### A. This Court lacks in personam jurisdiction over Daniels

A federal court may exercise in personam jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," so long as the exercise of jurisdiction comports with the

Constitution. Fed. R. Civ. P. 4(k)(1)(a); *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). So I look to Delaware law to see whether Daniels could be brought into a Delaware state court.

Delaware courts construe the state's long-arm statute "liberally so as to provide jurisdiction to the maximum extent possible" under the Constitution. *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157 (Del. Super. 1997); *see also* Del. Code Ann. tit. 10, §3104. Nevertheless, courts may not "ignore the specific words" of the statute; if a defendant's contacts do not fit, the statute does not allow a court to exercise in personam jurisdiction. *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods., Inc.*, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991).

Princeton Carbonworks says that this Court may exercise in personam jurisdiction over Daniels "based on [his] claims to own intangible property within the state—i.e., ownership of stock in a Delaware corporation." D.I. 16 at 9. It traces that argument to subsection (c)(5) of the long-arm statute, which creates in personam jurisdiction over anyone who "has an interest in, uses[,] or possesses real property in [Delaware]." Del. Code Ann. tit. 10, §3104(c)(5). But stock is not real property. Rather, it is a form of intangible personal property. *See* Del. Code Ann. tit. 8, § 159 ("The shares of stock in every corporation shall be deemed personal property."); *see also Salt Dome Oil Corp. v. Schenck*, 41 A.2d 583, 587 (Del. 1945). So subsection (c)(5) does not apply.

The rest of the long-arm statute is no help. None of the facts alleged in the First Amended Complaint or Princeton Carbonworks' opposition to Daniels's motion to dismiss suggests that Daniels conducts business in Delaware, contracts to supply

5

goods or services in Delaware, or does anything else that could create jurisdiction. *See generally* Del. Code Ann. tit. 10, § 3104(c)(1)–(4), (6). True, there is a strained textual argument that voluntarily purchasing stock in a Delaware corporation amounts to "conduct[ing] business in Delaware." But the only stock Daniels *voluntarily* acquired was his stake in Princeton-Florida. So none of the long-arm provisions applies. As a result, Rule 4(k)(1)(A) bars in personam jurisdiction over Daniels.

**B. This Court lacks in rem or quasi in rem jurisdiction over the stock**

Even without in personam jurisdiction, a court may yet be able to exercise jurisdiction over a piece of property owned by a defendant that is located where the court sits. That power is called "in rem" or "quasi in rem" jurisdiction, depending on the circumstances. Princeton Carbonworks' brief treats those terms interchangeably. *See, e.g.*, D.I. 16 at 7 ("This action … is … a *quasi in rem* or *in rem* action"); *id.* at 9 ("Jurisdiction in this matter would be appropriate … under a theory of *quasi in rem or in rem* jurisdiction"). But they are not the same.

"The essential function of an action in rem is the determination of title to or the status of property located … within the court's jurisdiction." 4A *Wright & Miller's Federal Practice & Procedure* § 1070 (4th ed. 2008 & Supp. 2025). A quasi in rem action, in contrast, "involves the assertion of a personal claim against the defendant of the type usually advanced in an in personam action and the demand ordinarily is for a money judgment," but the defendant's property is attached as a hook to bring him into court (or to satisfy an eventual default judgment). *Id.*

I need not decide whether Princeton Carbonworks is asserting an in rem or quasi in rem theory of jurisdiction in this case because both theories fail two ways.

6

*1. Princeton Carbonworks' claims do not involve stock "in" Delaware.* "Property can be used as a jurisdictional basis only if it is physically within the territory of the state in which the federal court is sitting." 4A *Wright & Miller* § 1071. Princeton Carbonworks makes much out of the fact that a Delaware statute provides that the "situs of the ownership of the capital stock" of all Delaware corporations "shall be regarded as in this State." Del. Code Ann. tit. 8, § 169; D.I. 16 at 13–14. But Counts II and III of Princeton Carbonworks' First Amended Complaint involve Daniels's former ownership of stock in the merged-out Princeton-Florida corporation. Before that stock was extinguished by the merger, it was not located "in" Delaware under § 169; if anything, it was "in" Florida.

One of Princeton Carbonworks' claims, Count I, arguably involves the stock of a Delaware corporation. That claim seeks a declaration that Daniels's "ownership in Princeton-Florida was extinguished via the Merger, and that he therefore owns no stock or other interest in Princeton-Delaware." First Am. Compl., D.I. 11 ¶ 39. But Count I is premised on Daniels's owning no stock in Princeton-Delaware. Put another way, Princeton Carbonworks is trying to have its cake and eat it too, arguing that Daniels owns stock "in" Delaware for jurisdictional purposes while simultaneously arguing that he owns no stock "in" Delaware on the merits. That does not work. "[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction," and presumably other forms of jurisdiction, "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Princeton Carbonworks'

7

theory of the case is that Daniels owns no stock in Princeton-Delaware because he has been effectively squeezed out. Though Daniels disputes that, I must accept Princeton Carbonworks' allegations as true at this stage. Doing so, I conclude that Count I, like Counts II and III, does not involve stock belonging to Daniels that is "in" Delaware. That bars in rem or quasi in rem jurisdiction.

2. *Exercising in rem or quasi in rem jurisdiction would violate the Due Process Clause.* Even if Princeton Carbonworks' claims involved stock located "in" Delaware, exercising jurisdiction over that stock would violate the Due Process Clause of the Fourteenth Amendment. A court may exercise in personam jurisdiction over a defendant only if it has enough contacts with the forum state. *See Int'l Shoe*, 326 U.S. at 316. *International Shoe*'s minimum-contacts rule applies to in rem and quasi in rem actions as well as in personam actions. *Shaffer v. Heitner*, 433 U.S. 186, 211 (1977). *Shaffer* thus held that a director or officer's mere ownership of Delaware stock, without other Delaware contacts, was not enough to give Delaware courts quasi in rem jurisdiction in breach of fiduciary duty suits. *Id.* at 213–17; *see also Instituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 221 (Del. 1982) (suggesting that under *Shaffer*, a Delaware court would lack in rem or quasi in rem jurisdiction over a nonresident defendant in a suit to cancel the defendant's Delaware stock based on fraud). Princeton Carbonworks does not allege that Daniels has any Delaware contacts besides his purported ownership of stock in Princeton-Delaware. Under *Shaffer*, that is not enough.

Resisting that conclusion, Princeton Carbonworks argues that unlike the breach of fiduciary duty claims in *Shaffer*, its claims arise directly out of the stock issued by Princeton-Delaware. D.I. 16 at 11–16. To be sure, *Shaffer* noted that the minimum-contacts standard might be met where the "underlying cause of action [is] related to the property," or where the "property is … the subject matter of th[e] litigation." *See Shaffer*, 433 U.S. at 213. And Delaware courts have floated the possibility, in dicta, that "where the subject matter of an action involves the legal existence of stock or its character or attributes, ownership of stock likely would be 'sufficient to satisfy the dictates of common fairness to permit binding adjudication … of such claim.'" *Onescreen Inc. v. Hudgens*, 2010 WL 1223937, at *5 (Del. Ch. Mar. 30, 2010) (quoting *Hynson Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 1992 WL 127567, at *7 (Del. Ch. May 28, 1992)); *see also Ryan v. Gifford*, 935 A.2d 258, 273 n.48 (Del. Ch. 2007). But even if I treat dicta from isolated Court of Chancery cases as law, Princeton Carbonworks' claims do not fit into the narrow category described in *Onescreen*, *Hynson Hart*, and *Ryan*.

For starters, Princeton Carbonworks is disputing not whether Princeton-Delaware stock exists, but whether Daniels owns any of it. Nor is Princeton Carbonworks challenging the "character or attributes" of Princeton-Delaware stock. "A stock's 'character or attributes' may include such issues as voting rights, liquidation preferences, or the authenticity of certificates." *Onescreen*, 2010 WL 1223937, at *5 n.39. None of Princeton Carbonworks' claims raises those issues. Instead, Princeton Carbonworks seeks to litigate Daniels' ownership stake in Princeton-

9

Florida, its value, and whether the merger effectively extinguished his interest in the surviving corporation. Those claims are about the effect of the merger, not the Princeton-Delaware stock itself.

Finally, Princeton Carbonworks asserts that "buying stock of a Delaware corporation" is sufficient to "bind the holder of that stock as a [class] plaintiff to adjudications concerning the corporate rights that attach to that stock." D.I. 16 at 13 n.4 (quoting *Hynson v. Drummond Coal Co., Inc.*, 601 A.2d 570, 579 (Del. Ch. 1991)). But Daniels did not voluntarily purchase stock in Princeton-Delaware. And even if he did, the Supreme Court has suggested that the Due Process Clause imposes fewer restrictions on courts exercising jurisdiction over absent class plaintiffs than it does on courts exercising jurisdiction over nonconsenting *defendants*. *See Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 811 (1985). So *Hynson* is not on point.

At bottom, Daniels's purported post-merger ownership of Princeton-Delaware stock is too flimsy a reed on which to rest the exercise of in rem or quasi in rem jurisdiction.

### III.   I DECLINE TO TRANSFER THE CASE

Daniels argues that I should use my discretion under 28 U.S.C. § 1404(a) to transfer the case to the Southern District of Florida, where Daniels' suit against Princeton Carbonworks and its directors is pending. D.I. 15 at 12. I may use § 1404(a) to transfer even though I found that I lack in personam jurisdiction over Daniels and in rem or quasi in rem jurisdiction over the stock. *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964). I must also consider transfer under 28 U.S.C. § 1631, which requires me to transfer a case "for want of jurisdiction" if transfer is in the

10

"interest of justice." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). Additionally, I may transfer the case to another district sua sponte. But transfer is not appropriate.

## A. It is not obvious that Princeton Carbonworks' suit could have been brought in the Southern District of Florida

Both § 1404(a) and § 1631 require that the case could have been brought in the transferee court. *See* 28 U.S.C. § 1404(a) (transferee court must be one where the suit "might have been brought" unless the parties agree otherwise); *id.* § 1631 (transferee court must be one where "the action or appeal could have been brought at the time it was filed or noticed"). Yet it is far from clear that this case could have been filed against Daniels in the Southern District of Florida. To begin with, the Southern District of Florida may lack personal jurisdiction over Daniels. Florida recognizes a "corporate shield" doctrine which protects corporate employees from being haled into Florida courts based on their activities as employees. *See Lane v. XYZ Venture Partners, LLC*, 322 F. App'x. 675, 678 (11th Cir. 2009). Even if Florida's long-arm statute could reach Daniels notwithstanding the corporate shield doctrine, Daniels's contacts in Florida appear minimal and may be insufficient to satisfy the dictates of the Due Process Clause. *See Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Int'l Shoe*, 326 U.S. at 316).

Venue is also an issue. It seems that a "substantial part of the events or omissions giving rise to the claim" occurred not in Florida, but rather in Connecticut, where Princeton Carbonworks has been headquartered since 2017. D.I. 16 at 21. Daniels argues that venue would lie in Florida because the disputed stock in the now-defunct

Princeton-Florida corporation is located there. D.I. 15 at 13 & n.4; *see also* 28 U.S.C. § 1391(b)(2) (venue proper where "a substantial part of property that is the subject of the action is situated"). But unlike Delaware, Florida lacks a statute identifying the state as the fictional "situs" for any stock issued by a Florida corporation. And the Florida courts have sent mixed signals on the question. *See, e.g.*, *Int'l Harvester Co. v. Mann*, 460 So.2d 580, 582 (Fla. App. 1984) (noting the "general rule … that stock may have a situs in the state of incorporation for purposes of determining rights and claims thereto," but also recognizing that "the situs may be elsewhere for other purposes" and flagging that "[t]he issue of the situs of stock for purposes of … establishing Florida long-arm jurisdiction … has not as yet been decided"). So it is not at all obvious that this lawsuit could have been brought in the Southern District of Florida.

## B. Even if Princeton Carbonworks' suit could have been brought in the Southern District of Florida, transfer is not in the interest of justice

Even if Princeton Carbonworks could have brought this action in the Southern District of Florida, I may transfer it (under either § 1404 or § 1631) only if doing so is "in the interest of justice." In addition, § 1404 requires that I consider the convenience of parties and witnesses. The Third Circuit has spelled out six private-interest and six public-interest factors to think about when analyzing whether to transfer a case under § 1404 (and by extension, § 1631). *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995); *Danziger & De Llano*, 948 F.3d at 132 (applying *Jumara* to § 1631 transfers).

The private-interest factors are: the "plaintiff's forum preference as manifested in the original choice," "the defendant's preference," "whether the claim arose elsewhere,"

"the convenience of the parties as indicated by their relative physical and financial condition," "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879.

The public-interest factors are: "the enforceability of the judgment," "practical considerations that could make the trial easy, expeditious, or inexpensive," "the relative administrative difficulty in the two fora resulting from court congestion," "the local interest in deciding local controversies at home," "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80.

Applying the twelve *Jumara* factors, I decline to transfer the case to the Southern District of Florida.

*1. On balance, the private-interest factors weigh against transfer.* Of the six private-interest factors, three are neutral, one weighs in favor of transfer, and two weigh against it. Princeton Carbonworks' choice of Delaware would normally be entitled to "paramount consideration." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). But "lack of personal jurisdiction over a defendant may result in a court affording less weight to a plaintiff's forum preference." *Auto Equity Loans of Del., LLC v. Shapiro*, 2019 WL 4169794, at *7 (D. Del. Sept. 3, 2019). So the plaintiff's forum choice is neutral. So are the convenience of the witnesses and the location of

the books and records. Daniels prefers to litigate in Florida, weighing in favor of transfer. *See* D.I. 15 at 12.

But the operative facts underlying the claims in this lawsuit appear to have arisen in Connecticut, where Princeton Carbonworks has its headquarters and where it likely made the relevant decisions to dilute Daniels's shares and merge. D.I. 16 at 21. And as Daniels acknowledges, Florida is an inconvenient litigating location for him because he lives in Pennsylvania. D.I. 15 at 16–17. It is likely an inconvenient forum for Princeton Carbonworks, too, given that the company is headquartered in Connecticut and its directors are based in the northeast. D.I. 16 at 21. Those two factors tip the scale against transfer.

*2.   The public-interest factors weigh against transfer too.* Of the six public-interest factors, four are neutral and the other two weigh against transfer. First are the neutral factors: The parties have not argued, and nothing suggests, that the declaratory judgment Princeton Carbonworks seeks would be unenforceable in Florida or Delaware. Practical considerations for trial also go both ways. There is already a case ongoing in the Southern District of Florida, but the judge has expressed skepticism about venue in Florida. *See* D.I. 16, Ex. B, at 13:8–13. And court congestion is not meaningfully different. Finally, no matter where the case ends up, the judge will need to apply both Florida and Delaware law, so the judge's familiarity with the applicable state law is a wash.

Next are the factors weighing against transfer: The "local interest in deciding local controversies at home" factor weighs against transfer because the former Princeton-

Florida entity no longer exists. The post-merger entity is a Delaware corporation, and resolution of all three of Princeton Carbonworks' claims "will impact the governance" of that corporation. D.I. 16 at 22. Thus, Delaware's interest is stronger. Plus, "[t]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes." *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 604 & n.9 (D. Del. 2012). As the merged-out Princeton-Florida corporation is defunct and Princeton-Delaware is the sole surviving entity, the public-policy factor weighs against transfer.

Weighing all the *Jumara* factors, I find that transferring the case to the Southern District of Florida is not in the interest of justice. I also find that transfer would not be convenient for the parties or potential witnesses.

## C. I also decline to transfer the case elsewhere sua sponte

While I need not "investigate on [my] own all other courts that 'might' or 'could have' heard the case," I have discretion to transfer the case to another court sua sponte. *Danziger & De Llano*, 948 F.3d at 132. But I decline to do so.

The only court where this action could almost certainly have been brought is the U.S. District Court for the Eastern District of Pennsylvania, which likely has general in personam jurisdiction over Daniels and is an appropriate venue under 28 U.S.C. §1391(b)(1). See D.I. 16 at 28. But the Eastern District of Pennsylvania has no other relationship to the action, so the *Jumara* factors weigh against transferring the case there.

The action could potentially have been brought in the U.S. District Court for the District of Connecticut, too. Venue would likely lie in Connecticut under 28 U.S.C.

§1392(b)(2), since it has been the location of Princeton Carbonworks' headquarters since 2017. D.I. 16 at 21. But the parties have not asked me to transfer it there. And since it is not clear that the case could have been brought there, I am reluctant to transfer the case on my own. Instead, I dismiss it without prejudice.

* * * * *

Princeton Carbonworks tried to beat Daniels to the courthouse by filing a preemptive suit in Delaware. But it went to the wrong place. Because this Court lacks personal jurisdiction over Daniels or his stock, and because I conclude that transferring the case would not be in the interest of justice, I dismiss Princeton Carbonworks' suit without prejudice.